UNITED STATES

v.

**Glenn Paul HARRIS, 021 54 6016, Aviation Boatswain's Mate (Equipment) Airman Apprentice (E–2), U. S. Navy.**

NMCM 81 2129.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 24 Feb. 1981.

Decided 26 March 1982.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LTCOL J. Dewayne Littlejohn, USMC, Appellate Government Counsel.

Before GLADIS, Senior Judge, BOHLEN and BYRNE, JJ.

PER CURIAM:

In accordance with his pleas, appellant was convicted at special court-martial of two specifications of assault, violations of Article 128, 10 U.S.C. § 928, Uniform Code of Military Justice (UCMJ); of one specification of unauthorized absence, a violation of Article 86, 10 U.S.C. § 886, UCMJ; and of one specification of breaking restriction, a violation of Article 134, 10 U.S.C. § 934, UCMJ. Appellant was sentenced by members to confinement of six months; forfeitures of $334.00 per month for six months; reduction in pay-grade from E–2 to E–1; and a bad-conduct discharge. The duration of both confinement and forfeitures was reduced to three months by the supervisory authority upon the staff judge advocate's advice that the military judge had erred to appellant's prejudice in permitting a prosecution rebuttal witness to testify as to appellant's veracity following appellant's unsworn statement.

■ Appellant has assigned for our consideration one bipartite question:

Whether it was prejudicial error for the military judge to permit rebuttal testimony as to appellant's character for truth and veracity after he has made an unsworn statement and, if so, whether a rehearing on sentence is required?

The substance of appellant's unsworn statement was in three parts: first, that he had pled guilty and been so found at a prior special court-martial; second, that while he had "done a lot of bad things," he had also

"made a lot of positive contributions" to his ship and wanted to "be a part of it for the rest of [his] enlistment," (R. 39.); and third, that the reason he turned himself in after having unlawfully absented himself from his ship in the instant case was his desire to "face all the charges, . . . and be a man, stop running like a little boy." (R. 40.).

Following appellant's unsworn testimony and over trial defense counsel's strong and continuing objection, the military judge permitted appellant's division officer to testify for the prosecution as to that officer's opinion of appellant's truthfulness. The opinion given was that appellant was "not truthful" and that the officer would not believe him under oath. (R. 43.)

The sentence imposed on appellant by the members was approved by the convening authority. As we have noted above, however, upon his staff judge advocate's advice, the supervisory authority cut in half the duration of the confinement and forfeitures.

We agree with appellant that the first part of the question he raises must be answered, as the staff judge advocate and supervisory authority recognized, in the affirmative. It was prejudicial error here for the military judge to permit appellant's division officer to testify as to his opinion of appellant's truthfulness after appellant made an unsworn statement. *United States v. Shewmake*, 6 M.J. 710 (N.C.M.R. 1978).

■ The second part of appellant's question merits a negative answer. Although in *Shewmake*, we ordered a rehearing on sentence to remedy such an error, we did not rule out other remedies in appropriate cases. Under the circumstances of this case we find that the supervisory authority's reduction of the adjudged confinement and forfeitures purged the error. *See United States v. Bashaw*, 6 M.J. 179 (C.M.A.1979).

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

BYRNE, Judge (concurring in the result):

I conclude it was *not* prejudicial error for the military judge, following the appellant's unsworn statement, to permit a prosecution witness to relate his opinion that appellant is untruthful and that he wouldn't believe him under oath.

The *Manual for Courts-Martial, 1969 (Rev.)* (MCM), does not address the issue. Federal practice would permit consideration of such information by a federal judge. Members *must* have such information in order to arrive at an appropriate sentence.

In the first half of the twentieth century the federal and military justice systems had *similar* practices regarding according the accused "allocution" rights. Unfortunately, while the federal system has retained a realistic viewpoint regarding such statements, the military system has proceeded to erect a procedural "monument" around the unsworn statement which, *in practice*, has the beneficial aspects of testimony for an accused but little assurance of reliability. The Courts of Military Review in *United States v. Shewmake*, 6 M.J. 710 (N.C.M.R. 1978); *United States v. McCurry*, 5 M.J. 502 (A.F.C.M.R.1978); and *United States v. Stroud*, 44 CMR 480 (A.C.M.R.1971) and progeny are adding more bricks to this "monument" and are creating an unnecessary divergence from federal practice. They are also solidifying the military justice system's vulnerability to chicanery and increasing the potential for misleading court-martial members into awarding a less than appropriate sentence.

The MCM *does not* resolve the issue before us. Paragraph 75c(2), the applicable paragraph in this case, states:

Whether or not he testified on the issue of guilt or innocence or as to matters in extenuation or mitigation, the accused may make an unsworn statement to the court in mitigation or extenuation of the offenses of which he stands convicted, but the right to make such an unsworn statement does not permit the filing of the affidavit of the accused. This unsworn statement is not evidence, and the accused cannot be cross-examined upon

it, but the prosecution may rebut statements of fact therein by evidence.

As of 1 August 1981, subsequent to the date of trial of this case, this statement was revised to state:

The accused may make an unsworn statement under this paragraph and may not be cross-examined by the trial counsel upon it or examined upon it by the court. The prosecution may, however, rebut any statements of facts therein.

Amendments to the MCM, Executive Order 12315 of July 29, 1981.

The fact that the accused is protected from cross-examination does not address the issue in this case. Neither does the statement that the facts in the statement may be rebutted address this inquiry. Paragraph 75 does not, of course, specifically *permit* the receipt of such information.

In such situations, our guidance is clear. Procedures in the federal district courts are applicable, if "not incompatible with military law or with the special requirements of the military establishment." *Chenoweth v. Van Arsdall*, 22 USCMA 183, 186, 46 CMR 183, 186 (1973). This basic concept comes into play, as to a procedural issue, when neither the Uniform Code of Military Justice (UCMJ) nor the MCM addresses an issue, such as in this case. *Id.* Even if the federal rule were otherwise, which it is not, there are unique circumstances that warrant advising court-martial *members* of this information.

## A

### Historical Service Limitations Upon Unsworn Statements

Since the seventeenth century, there was a common-law recognition that the accused had a right of allocution; that is, that s/he "be personally afforded the opportunity to speak before imposition of sentence." *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670, 673 (1961).

The military justice system and the federal criminal justice system both recognized this right. L. Orfield, 5 *Criminal Procedure Under the Federal Rules* § 32:10 (1967); W. Winthrop, *Military Law and Precedents* 299 (2nd ed. 1920) (*Winthrop*); *Naval Courts and Boards* § 359 (1937); *Manual for Courts-Martial of the United States Coast Guard*, paragraph 127 (1949).

Prior to the *Manual for Courts-Martial, U. S. Army, 1949* and the *Manual for Courts-Martial, United States (1951)*, the military justice system had certain assurances that members, who, at that time, always determined the sentence, would not unduly rely upon unsworn statements. Even when an accused testified under oath, it was recognized that while s/he was not "unworthy of belief" s/he did possess "an interest greater than that in any other witness, and to that extent" ... "the question of credibility" was affected. *Naval Courts and Boards, supra,* at § 307; *see also* §§ 234, 235. *See also Winthrop, supra,* at 359. Further, the unsworn statement was made as part of argument *before* findings. *Naval Courts and Boards, supra* at § 359; *Winthrop, supra* at 299; *Manual for Courts-Martial of the United States Coast Guard, supra* at paragraph 127. *This* statement was not considered "evidence." *Naval Courts and Boards, supra,* at § 359; *Winthrop, supra,* at 300–301.[1]

Once this background is established, it is not surprising that the *Manual for Courts-Martial, U. S. Army, 1949*, retained a statement that the unsworn statement is not

---

1. A World War II naval service decision noted the limitations that were placed upon the unsworn statement:

 ... Although evidence in extenuation may be received *after* the findings have been arrived at, however, a statement is entitled to *no evidential weight* and operates in two ways: (1) to modify the plea of the accused where inconsistent therewith; and (2) as a plea for leniency, which may not be considered by the court except in recommending the accused to the clemency of the reviewing authority. Therefore, where the accused wishes to introduce in evidence matters in extenuation or mitigation after the findings, such matters should be brought out as *sworn testimony*, the accused himself or a witness in his behalf regularly taking the stand and subjecting himself to cross-examination.

(Emphasis supplied.) CMO 1–1942, 152.

"evidence" and that the *Manual for Courts-Martial, United States, 1951,* adopted a similar statement. *Compare Manual for Courts-Martial, U. S. Army, 1949,* paragraph 76, with *Manual for Courts-Martial, United States, 1951,* paragraph 75c(2).

Members serving on courts-martial prior to the UCMJ were also aware of the fact that analysis of mitigating circumstances affecting the sentence was the proper function of the reviewing authorities, *not* the court-martial. *Naval Courts and Boards, supra* at 450; *Manual for Courts-Martial of the United States Coast Guard, supra* at paragraph 75; *Winthrop, supra* at 402. (Mitigating circumstances are, of course, required to be considered by members in resolving an appropriate sentence under today's MCM.)

Consequently, the sources from which the present MCM has sprung recognized that members were extremely vulnerable to placing undue weight upon an accused's unsworn statement and sought to ensure that this did not occur. The drafters of the Army *Manual for Courts-Martial* and the 1951 *Manual for Courts-Martial* tried to provide some forms of protection from abuses by the warning that the unsworn statement was not evidence. But, when that statement (relating as it did more to *findings* than *sentence*) was reviewed prior to the 1981 change to the MCM and theoretically "bunched together" with writings and documents for whom the rules of evidence are "relaxed," it is not surprising that this apparent anomaly (which was more a warning from the past than an accurate legal pronouncement) was removed. Amendments to the MCM, paragraph 75. (Executive Order 12315 of July 29, 1981).

### B

### *Theoretical Similarity Of Federal and Military Practice*

Rule 32(a)(1) of the Rules of Criminal Procedure for the United States District Courts presently provides:

Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. . . .

A similar practice is provided for in the MCM. *See* MCM *supra,* paragraph 75c(2) and Appendix 8b at A8–24.

### C

### *Practical Divergence of Federal and Military Practice*

These similarities, however, in present day practice are more illusory than real.

Assume for a moment that *this* appellant had been tried in a federal district court. The federal rule would presently be satisfied, insofar as the accused's right to allocution is concerned, if the federal judge had specifically addressed the accused and said "Do you, the accused, Airman Apprentice Harris, have anything to say before *I* pass sentence." *United States v. Green, supra* 81 S.Ct. at 655. The federal judge would then evaluate this statement, utilizing practical knowledge acquired from years of experience.

In contrast, the military justice system, since 1951, has developed a very detailed trial procedure for the same evolution. Some accused are permitted to make their unsworn statements from the stand. Many defense counsel are allowed to conduct "direct examinations" of their clients when they make unsworn statements. (In *this* case, such a procedure was permitted.) The members must be instructed that they may consider such statements in their deliberations. MCM, *supra,* at paragraph 76b(1).

The federal judge may consider the accused's character for truth and veracity. The Federal Rules of Criminal Procedure *require* the presentence investigation report to contain information "affecting" the accused's "behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court." Fed.R.Crim.P. 32(c)(2). This means that an accused's "honesty" and "rectitude" may be covered

in the presentence report. *Baker v. United States,* 388 F.2d 931, 934 (4th Cir. 1968). In imposing sentence, a federal district court judge may consider the fact that he believed the accused committed perjury when testifying on the merits. *United States v. Levine,* 372 F.2d 70, 74 (7th Cir. 1967). Consequently, the testimony of someone who knew the accused, that he was not truthful and that he would not believe him under oath, would be admissible as part of the presentence report, and would be especially valuable in evaluating the character of the accused who is exercising his allocution rights because it would preclude the possibility of the sentencing authority's being unduly influenced by a fabricated statement.

As a contrast, the members of a court-martial have been precluded from learning vital information concerning the accused who makes an unsworn statement because of the failure of *Shewmake, McCurry,* and *Stroud,* to align military procedure with federal procedure where applicable. We are "out of step" because we have created an unnecessary prohibition in a situation where we are *more vulnerable* to potential abuses than the federal system because laymen (members), vice an experienced judge, may be determining the sentence.

Military judges have recognized the serious potential for abuses inherent in our present unsworn statement procedure and some have taken steps, via appropriate cautionary instruction, to ensure that members are fully informed of the nature of the unsworn statement. They also have permitted, as in this case, information to be provided to the members that would clearly be admissible in federal district court. To fail to support this initiative will constitute the perpetuation of a vulnerability within the military justice system that we will long regret.[2]

2. I also see no reason why the military judge should not, as the federal judge, be privy to this information when s/he is the sentencing authority.