**UNITED STATES**

v.

**Sergeant Douglas R. BRITT, FR572–73–8749 United States Air Force.**

**ACM 31804.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 24 Jan. 1995.

Decided 3 Oct. 1996.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Major Del Grissom.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Lieutenant Colonel Michael J. Breslin, and Lieutenant Colonel Robert E. Williams.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

OPINION OF THE COURT

MORGAN, C.H., II, Judge:

This case calls upon us to decide the limits, if any, which may be placed on the contents of an unsworn statement of a convicted accused during the sentencing phase of a court-martial. We hold that the military judge did not abuse her discretion in forbidding appellant, as part of his unsworn statement, from offering his belief that if he were not punitively discharged, his commander would administratively separate him.

Convicted pursuant to his pleas of unlawful use of methamphetamine, appellant elected to have his sentencing case heard before a general court-martial consisting of members with enlisted representation. In an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a), session, the trial defense counsel proffered the written statement proposed to be read by appellant to the members. The prosecutor objected to the following sentence, as "inappropriate:"

> It is my understanding from conversations with [defense counsel] that if you do not punitively discharge me my commander will administratively discharge me from the Air Force.

Defense counsel responded with the view, now advanced by appellate defense counsel, that during an unsworn statement a convicted accused is entitled to "comment on just about anything." The military judge sustained trial counsel's objection, ruling that the unsworn statement is not "an unfettered right." We agree.

*Origin of Unsworn Statement*

Founded neither in the constitution nor in statute, the unsworn statement in military criminal practice evolved from a time, prior to 1878, when a military accused was statutorily incompetent to testify on his own behalf.[1] That incompetence, along with the fact that

---

**1.** At trials before courts-martial and courts of inquiry "the person charged shall be a competent witness at his own request, but not otherwise, and his failure to make such request shall not create any presumption against him." Act of March 16, 1878, 20 Stat. 30 (1878).

most accused went unrepresented by counsel, led to the development of the unsworn statement or argument, which until 1878 was the only means whereby an accused could communicate his view of the evidence, and argue his case, *prior to findings. See* G. DAVIS, A TREATISE ON THE MILITARY LAW OF THE UNITED STATES 132–133 (3d ed. rev. 1913). Colonel Winthrop, in his chapter on trial procedure prior to findings, describes the limits of this procedural privilege, which he termed the "concluding statement," thus:

> The testimony on both sides being concluded, either party or both parties—the accused *first in order* and the judge advocate *after* him—may present a closing "statement" or address to the court, which may be oral but is commonly read from a writing. While, strictly, the closing of the argument, as of the proof, belongs to the party who has the affirmative of the issue, the order indicated is that now invariably observed in the practice of our courts-martial, whatever be the nature, of the defence, if any, which may be made.... The statement may consist of a brief summary or version of the evidence, with such explanation, or allegation of motive, excuse, matter of extenuation, & c., as the party may desire to offer, or it may embrace, with the facts, a presentation also of the law of the case and an argument both upon the facts and the law.

W. WINTHROP, MILITARY LAW AND PRECEDENTS 299 (2d ed. 1920 Revision). Colonel Winthrop notes that "a very considerable freedom" is permitted in this argument, but that it was not unlimited. The accused was permitted to "sharply criticize the testimony as given by the adverse witnesses, and their apparent or supposed *animus* in giving it, as well as the conduct, motives & c., of the persons through whose acts or at whose instance he has been brought to trial, and especially those of the actual prosecutor or responsible accuser." But this argument was not to exceed the bounds of proper respect for military decorum, and accused were cautioned against drifting into "gratuitously disrespectful language toward superiors or the court." *Id.* Where the statement "manifestly exceeds a reasonable freedom" in an extreme case, the court "may properly

report the facts to the reviewing authority for the preferring of charges or other action." *Id.* at 300. Leaving no doubt that he was referring to the antecedent to what we know as argument on findings, Winthrop continues:

> As to the statement or argument on the part of the *prosecution,* it is comparatively rare that this becomes subject to criticism on account of gross improprieties of language. Where, however, it exceeds a proper license, the same procedure is to be observed as in the case of a similar address on the part of the accused.

*Id.* Winthrop reminds practitioners that these statements are not evidence, "nor can it be a vehicle of evidence, or properly embrace documents or other writings, or even averments of material facts, which, if duly introduced, would be evidence." *Id.*

Because of its argumentative character, it was "irregular and improper to permit the statement to be sworn to." *Id.* at 301.

Winthrop deals with the sentencing procedure much later, in a separate chapter, and in much more abbreviated fashion. *Id.* at 387. There is no reference to an unsworn statement at this juncture, nor even to argument, nor was the accused afforded any opportunity to put on favorable evidence. The procedure was apparently limited to ascertaining if the convicted accused had any previous convictions. The accused was entitled to contest the admissibility of any such convictions, but that was the limit of his apparent participation in the sentencing phase of the trial. General Order 41 of June 26, 1886, rendered consideration of such convictions mandatory, although Colonel Winthrop seemingly allied himself with critics of the practice, inasmuch as it "substantially authorized the introduction of bad character before due foundation had been laid therefor by the introduction of good character on the part of the accused." *Id.* at 389.

By the turn of the century, the practice of permitting the accused a statement or argument on the findings was of sufficient importance that The Judge Advocate General of the Army held its denial, even when the accused had testified under oath before find-

ings, to be a fatal abridgement of the accused's rights. DIGEST OF THE OPINIONS OF THE JUDGE ADVOCATE GENERAL OF THE ARMY 573 (1912). *See also* TILLOTSON, ARTICLES OF WAR ANNOTATED 114 (Fifth Rev. Ed.1949).

The 1928 Manual for Courts–Martial codified the practice of having the accused give an unsworn statement, "in denial, explanation, or extenuation of the offenses charged, but this right does not permit the filing of the accused's own affidavit," and for the first time, distinguished that statement from the argument of counsel on the merits, which was a discrete part of the pre-findings procedure, and which *followed* the unsworn statement. Significantly, comment on the liberality afforded the content of the statement vanished, a logical outcome of the distinction between an accused's allocution [2] right and the right of defense counsel to comment upon and argue the evidence on findings. A MANUAL FOR COURTS–MARTIAL, U.S. ARMY 1928, ¶¶ 76–77 (Corrected to April 20, 1943). The 1928 Manual also codified, for the first time, a pre-sentencing procedure more familiar to modern practitioners. It permitted consideration of an accused's prior convictions, if any, along with data as to his age, pay, and service. Once again, the accused's participation in this process appeared to be limited to objection to any such data as being inaccurate, incomplete, or containing "certain specified objectionable matter." *Id.* at ¶ 79c. No provision was made for an unsworn statement, nor for argument by either party. This practice was carried forward without substantial change in the last pre-UCMJ Manuals for Court–Martial of the Army and Air Force in 1949.

The unsworn statement, as a feature of the sentencing phase of the court-martial, made its first appearance in the Manual for Courts–Martial, 1951, which was in keeping with the sweeping revisions represented by the enactment of the Uniform Code of Military Justice the previous year. Paragraph 75(c) formalized a process whereby the accused could introduce matters in extenuation or mitigation. With respect to such matters,

the court could relax the rules of evidence. Subparagraph (2) articulated the specific right of an accused to make a statement as follows:

(2) *Statement of accused.*—Whether or not he testified on the issue of guilt or innocence or as to matters in extenuation or mitigation, the accused may make an unsworn statement to the court in mitigation or extenuation of the offenses of which he stands convicted, but the right to make such a unsworn statement does not permit the filing of the affidavit of the accused. This unsworn statement is not evidence, and the accused cannot be cross-examined upon it, but the prosecution may rebut statements of fact therein by evidence. The statement may be oral or in writing, or both. It may be made by the accused, by counsel, or by both. The statement should not include what is properly argument, but ordinarily the court will not stop a statement on that ground if it is being made orally and personally by the accused.

MANUAL FOR COURTS–MARTIAL, UNITED STATES, ¶ 75(c)(2) (1951). Early on, the emigration of the unsworn statement to a post-findings portion of the procedure led the Court of Military Appeals to articulate an obvious restriction on its content—that an unsworn statement was no longer a means by which to gainsay culpability, a hitherto important attribute. *United States v. Tobita*, 3 U.S.C.M.A. 267, 12 C.M.R. 23, 27, 1953 WL 2174 (1953) (following conviction of rape, accused could not use unsworn statement to deny use of force).

Adoption of the 1984 Manual led to the inclusion of the paragraph 75(c) right as Rule for Courts–Martial (R.C.M.) 1001(c)(2). Like its predecessor, the unsworn statement was available as a means for the accused to bring to the attention of the court matters "in extenuation, in mitigation" and to "rebut matters presented by the prosecution." R.C.M. 1001(g) continued the practice of permitting argument of counsel on sentencing approved in *United States v. Olson*, 7 U.S.C.M.A. 242, 22 C.M.R. 32, 34, 1956 WL

---

**2.** Strictly speaking, allocution is the procedure whereby a *convicted* prisoner addresses the court. BLACKS LAW DICTIONARY (Fifth ed. 1979). It

is inaccurate, therefore, to refer to the statement described by Colonel Winthrop as an *allocution* right.

4731 (1956) and first codified in the 1969 revisions to the Manual. MANUAL FOR COURTS-MARTIAL, UNITED STATES ¶ 75f (Change 5) (1969 rev). Both of these provisions were carried over, intact, to the 1994 edition of the 1984 Manual, which governed appellant's trial.

### Limitations on Unsworn Statement

Trial defense counsel's argument that the unsworn statement could include "anything," including "spilled milk" may well have stemmed from uncertainty over the genesis of the right itself or that in its earliest incarnation it served as the accused's sole mechanism for argument on findings and even unsworn denials of the charge. Then Chief Judge Sullivan's dictum in *United States v. Rosato*, 32 M.J. 93, 96–97 (C.M.A.1991), to the effect that the right was "generally unrestricted," was premised on the Winthrop and Davis discussions of the 19th century practice of permitting an accused a pre-findings statement cum argument discussed above. Its migration, *mutatis mutandis,* to a pre-sentencing right of allocution is a comparatively recent feature of military criminal jurisprudence, and is correspondingly shaped by the authority which gives it life, R.C.M. 1001(c)(2).

Unsworn statements are not unlimited, but by the terms of R.C.M. 1001(c)(2) may be addressed to one or more of three purposes: (a) extenuation, (b) mitigation, and (c) matters in rebuttal to the prosecution. Extenuation relates to "the circumstances surrounding the commission of the offense, including those reasons for committing the offense which do not constitute a legal justification or excuse." R.C.M. 1001(c)(1)(A). Mitigation, on the other hand, concerns itself with the accused and includes, for example, any nonjudicial punishment imposed for the same offense or offenses of which the accused stands convicted, or "particular acts of good conduct or bravery and evidence of the reputation or record of the accused in the service for efficiency, fidelity, subordination, temperance, courage, or any other trait that is desirable in a service member." R.C.M. 1001(c)(1)(B).

Appellant invites our attention to *Rosato* and *United States v. Partyka*, 30 M.J. 242 (C.M.A.1990), urging that we read those cases for the proposition that the unsworn statement is an unrestricted right. Neither case stands for such. *Rosato* properly addressed itself to relevancy—that is, whether an accused's desire to undergo the rigors of a service rehabilitation was *relevant* to rebut the prosecution's evidence, coming through his commander, that the accused lacked rehabilitation potential. It was, therefore, in direct rebuttal to prosecution evidence, one of the three relevant topics for an unsworn statement. *Partyka* is wholly inapposite, as it dealt, once again, with relevance—this time whether evidence the prosecution produced in rebuttal to the accused's unsworn statement was legally relevant. MIL. R. EVID. 403.

The absolutist view pressed by appellant not only is unsupported by the terms of R.C.M. 1001(c)(2) and by the history of the development of the unsworn statement, but leads, as absolute propositions often do, to absurd results. Nobody could seriously question the military judge's right to interrupt an accused reading the Manhattan telephone directory and the entire Encyclopedia Britannica into the record. Yet the basis for doing so is the military judge's authority to rule on questions of *relevance.*

In similar vein, the absolutist position on an unsworn statement would essentially nullify all of the Military Rules of Evidence and any rulings excluding evidence tendered by the defense, as anything thus excluded could be brought before the members through the accused's unsworn statement. Thus, a victim in a rape trial, whose sexual history was properly kept out by MIL. R. EVID. 412, the so-called "Rape Shield" law, could be subsequently smeared by that same evidence in the unsworn statement. Just such a tactic was attempted in *United States v. Ezell*, 24 M.J. 690 (A.C.M.R.1987), and properly repulsed.

Our survey of the relevant case law discloses that no court has ever taken the position that the right to make an unsworn statement meant that the trial judge was powerless to restrict its *content.* Instead, the various holdings on the subject all turn

on the same issue—whether something in the statement was or was not relevant to the purposes which circumscribe its making. Thus the question is not *whether* the military judge in this case had the authority to restrict appellant's unsworn statement. She did. It is rather whether she abused her discretion in deciding that appellant's reference to the possibility of an administrative discharge was not properly a matter in extenuation, mitigation, or rebutted evidence propounded by the prosecution. *United States v. Zakaria*, 38 M.J. 280, 283 (C.M.A. 1993); *United States v. Redmond*, 21 M.J. 319, 326 (C.M.A.), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1950, 90 L.Ed.2d 359 (1986).

Nothing about the speculative possibility of an administrative discharge explains the circumstances of appellant's crime (extenuation), nor is it a matter going to the peculiar fidelity, valor, or character of his service (mitigation). Arguably, it could have fallen into the niche of rebuttal had the prosecutor improperly referred to a punitive discharge as the appropriate means by which the Air Force rids itself of drug abusers. But the prosecutor did not do so, and in argument was scrupulous to correctly characterize a punitive discharge as punishment *qua* punishment. Hence, the possibility of an administrative discharge was simply not relevant, even remotely, to any of the three purposes in R.C.M. 1001(c). What's more, there are affirmative reasons why the collateral consequences of sentencing, or the administrative alternatives to court-martial action, are inappropriate during sentencing. *United States v. McElroy*, 40 M.J. 368, 372 (C.M.A.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1256, 131 L.Ed.2d 137 (1995); *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A.) (courts-martial to concern themselves with appropriateness of particular sentence without regard to collateral administrative effects of penalty under consideration), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988) *See also United States v. Lee*, 43 M.J. 518 (A.F.Ct.Crim.App.1995). Accordingly, we hold that the military judge did not abuse her discretion in forbidding appellant from including the reference to the possibility of administrative discharge in his unsworn statement.

Having found appellant's assignment of error to be without merit, we hold the findings and sentence to be correct in law and in fact, the sentence is appropriate, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J. MORGAN, concur.