# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

## No. ACM 39160

———————————

### UNITED STATES
*Appellee*

**v.**

### Micah J. CARROLL
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 3 April 2018

———————————

*Military Judge:* Marvin W. Tubbs II (arraignment), Joshua E. Kastenberg (motions), Shelly W. Schools (trial).

*Approved sentence:* Bad-conduct discharge, confinement for 9 months, and reduction to E-4. Sentence adjudged 4 June 2016 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Patrick A. Clary, USAF; Frank J. Spinner, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges*.

Judge SPERANZA delivered the opinion of the Court, in which Senior Judge HARDING and Judge HUYGEN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

SPERANZA, Judge:

Officer members convicted Appellant of committing an indecent act by wrongfully video-recording, without consent, HM and DM having sexual relations in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] The indecent act conviction was based on the version of Article 120, UCMJ, in effect in 2010.[2] The members sentenced Appellant to a bad-conduct discharge, confinement for nine months, forfeiture of all pay and allowances, and reduction to E-4. The convening authority did not approve the adjudged forfeitures, but approved the remainder of the adjudged sentence. The convening authority also deferred mandatory forfeitures until action and waived mandatory forfeitures for the benefit of Appellant's dependents.

On appeal, Appellant claims that (A) the military judge erroneously applied Military Rule of Evidence (Mil. R. Evid.) 412 "to prevent the defense from using relevant and material evidence to challenge the indecency of [Appellant's] conduct" and (B) his conviction for committing an indecent act is legally and factually insufficient. We disagree, find no prejudicial error, and affirm.

## I. BACKGROUND

This sordid story started shortly after HM and DM, both military members, returned from temporary duty in Guam and sought divorces from their respective spouses. HM was married to Appellant, while DM was married to JS. Consequently, HM moved into an apartment with her and Appellant's children. Appellant helped HM move and HM allowed Appellant to stay in the apartment until he was able to find a place for himself. Appellant took that opportunity to place a camera in HM's bedroom in order to confirm his suspicion that HM and DM were having an affair. Appellant surreptitiously recorded HM and DM having sex on one occasion. During this time, DM owned a white t-shirt with green long sleeves that he wore to HM's apartment when he had a sexual encounter with HM in her bedroom.

Appellant's suspicions seemingly confirmed by the recording, he approached JS at her workplace and asked JS to describe DM. JS described DM's physical appearance. Appellant then asked JS if DM owned a "softball looking shirt with green sleeves and a white front and back." JS confirmed

---

[1] The members acquitted Appellant of three specifications of indecent exposure and two specifications of sexual abuse of a child.

[2] *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), App. 28, at A28–2.

that DM did own such a shirt. JS finally asked Appellant why he wanted to know this information. Appellant responded that "he wanted to know if it was [DM] that was f[***]ing [HM]." JS took Appellant into an empty office to ask Appellant questions about his accusation. JS asked Appellant "where he got the idea [DM and HM] were sleeping together." After hesitating and having JS promise she would not tell anybody what he was going to say, Appellant explained that "when he was helping [HM] move out of their house into her apartment, he hid a video camera in her bedroom and had a video of [DM and HM] having sex." Appellant offered to show JS the video. JS declined Appellant's offer and, in general terms, told Appellant that what he did was wrong and that "the only way [JS] would not say anything at that point [was] if he did truly go and get the camera out as soon as possible."

Appellant told his current wife, EH, that "he filmed his ex-wife [HM] having sex" by "plac[ing] a hidden camera without [HM] knowing."

No one other than Appellant saw the video and the video was not available at trial.

## II. DISCUSSION

### A. Military Rule of Evidence 412

Prior to trial and after providing the required notice pursuant to Mil. R. Evid. 412, the Defense moved, in writing, to admit evidence that during the charged time period HM and DM "were engaged in an extramarital affair while HM was married to [Appellant] and DM was married to [JS]." The Defense asserted that Appellant "taped HM and DM having sex, and told [JS] about it, as proof of the affair, and not as [an indecent act]." The Government and both HM's and DM's special victims counsel (SVC) opposed this motion.

The parties litigated the motion. HM and DM were heard through their respective SVCs, as permitted by Mil. R. Evid. 412. During a closed session, the Defense reiterated its desire "to get into . . . the issue regarding the alleged affair between [HM] and [DM]." Appellant's civilian defense counsel argued that evidence of the affair was "constitutionally required" because such evidence provided Appellant a defense to the charged misconduct. Civilian defense counsel explained that the recording was not made "for a sexual purpose" and no reasonable expectation of privacy exists for an individual engaged in an extramarital affair while the individual is living with his or her spouse. According to civilian defense counsel, Appellant was therefore legally justified, or excused, for recording HM and DM.

The military judge disagreed and ruled against the Defense on the record. The military judge explained, "indecent acts is a general intent crime, so [Appellant's] reasons are not relevant. Thus, the defense will not be permitted to

argue the conduct was not wrongful because of [HM's] affair or otherwise argue the existence of an affair as a defense to [indecent acts]." Nevertheless, the military judge stated she understood the "defense's concern about misleading the members about what prompted the accused's conduct even if it [did] not give rise to a legal defense." Accordingly, the military judge permitted the Defense "to introduce evidence through cross-examination of [HM] that after she returned from Guam and prior to their divorce being finalized, [Appellant] believed she was having an affair with [DM], and that [Appellant] confronted her about it multiple times." The military judge immediately reemphasized her previous ruling that "the defense [was] not permitted to ask [HM] to confirm whether she did, in fact, have an affair, as this fact is not relevant or material to any issue in this case." The military judge also advised that if Appellant testified, he would be permitted to explain "that the reason he hid the video camera in the bedroom was because he believed [HM] was having an affair." The military judge clarified that Appellant's reason or purpose for making the recording was not relevant to the members' determination of whether the conduct was "indecent" or whether a reasonable expectation of privacy existed. The military judge concluded she did not "see how [the Defense could] argue that [Appellant's] motivation makes it not indecent or not wrongful."

HM testified during findings and confirmed on cross-examination that Appellant "confronted [her] about his suspicion that [she] had had an affair with [DM] while [she was] deployed." Appellant chose not to testify.

The military judge provided her findings instructions to the members orally and in writing. In pertinent part, she instructed the members as follows:

> [T]he accused is charged with the offense of indecent acts, in violation of Article 120, UCMJ. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt: that (1), . . . the accused engaged in certain wrongful conduct, to wit: video recording [HM] and [DM] having sexual relations without their consent; and, (2), that the conduct was indecent.

> "Indecent conduct" means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes, but is not limited to, observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary

> to that person's reasonable expectation of privacy, of (a), that other person's genitalia, anus, or buttocks, or if the other person is female, that person's areola or nipple, or (b), that the other person – that other person while that other person is engaged in a sexual act.
>
> . . .
>
> "Wrongful" means without legal justification or lawful excuse.
>
> . . .
>
> Evidence has been introduced that, prior to the offense charged . . . the accused believed [HM] was engaged in an extra-marital affair with her now-husband, [DM]. This evidence may be considered by you for the limited purposes of understanding what may have prompted the accused's conduct or in making credibility determinations. However, any such suspicion by the accused does not constitute a legal defense to the conduct charged. That said, the Government has the burden of proving each element of each offense beyond a reasonable doubt.

The members convicted Appellant of committing the indecent act as charged and acquitted Appellant of several other charges and specifications. At sentencing, Appellant proffered an unsworn statement that included his thoughts about the proceedings for custody of his and HM's children, HM's and DM's testimonies during closed proceedings of the court-martial, and the lack of disciplinary action against HM and DM. The Government, along with both HM's and DM's SVCs, objected to this information being provided to the members for their consideration in reaching an appropriate sentence. The military judge agreed with the Government and SVCs and required Appellant to edit his unsworn statement to exclude the objectionable information. The military judge relied, in part, upon Mil. R. Evid. 412 to limit Appellant's unsworn statement, finding that the proffered matters were not proper extenuation and mitigation. Nevertheless, the military judge permitted Appellant, in his unsworn statement, to explain HM's and DM's "affair;" the suspected affair's impact on Appellant and his actions; the impact (or lack thereof) of the recording and HM's alleged infidelity on Appellant's divorce proceedings with HM; and, Appellant's assertion that his recording had "proven the affair," but "resulted in [his] conviction."

Appellant now claims the military judge abused her discretion by improperly applying Mil. R. Evid. 412, thus denying Appellant "the ability to fully defend himself" and "fully exercise his right to an unsworn statement." Appellant first contends that evidence HM and DM may have, in fact, commit-

ted adultery in violation of Article 134, UCMJ, 10 U.S.C. § 934, does not fall within the reach of Mil. R. Evid. 412. Appellant also argues that the military judge's decision to exclude evidence of adultery "prohibited [Appellant] from making the straightforward argument that a husband's attempt to uncover the infidelity of his spouse, a crime under military law, is not the kind of sexually depraved act contemplated by [the] definition [of indecent conduct]." Appellant explains that the military judge effectively "took the question of indecency out of the panel's hands." Finally, Appellant maintains the military judge improperly abridged his broad right to allocution at sentencing when the judge limited his unsworn statement. We disagree with each of Appellant's assertions.

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citing *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.* (internal quotation marks and citations omitted) (quoting *Olson*, 74 M.J. at 134); *see also United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citation omitted) ("Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo."). The application of Mil. R. Evid. 412 to proffered evidence is a legal issue that appellate courts review de novo. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010).

Mil. R. Evid. 412 provides that evidence offered by the accused to show that any alleged victim engaged in other sexual behavior or to prove any alleged victim's sexual predisposition is generally inadmissible. Mil. R. Evid. 412(a). For purposes of the rule, "sexual behavior" means "any sexual behavior not encompassed by the alleged offense." Mil. R. Evid. 412(d). "Sexual predisposition" by comparison "refers to an alleged victim's mode of dress, speech, or lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the factfinder." *Id.*

The exclusionary reach of Mil. R. Evid. 412 is subject to three limited exceptions. The third exception—and the only one potentially applicable to Appellant's case—provides that the evidence is admissible if its exclusion "would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C). This exception includes an accused's Sixth Amendment right to confront witnesses against him, including the right to cross-examine and impeach those witnesses. *Ellerbrock*, 70 M.J. at 318 (citations omitted). The burden is on the defense to overcome Mil. R. Evid. 412's general rule of exclusion by demonstrating an exception applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998) (quoting *United States v. Moulton*, 47 M.J. 227, 228 (C.A.A.F. 1997)).

Generally, evidence of an alleged victim's sexual behavior or sexual pre-disposition is constitutionally required and "must be admitted within the ambit of [Mil. R. Evid.] 412(b)(1)(C) when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318; *see also Roberts*, 69 M.J. at 27. Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Materiality "is a multi-factored test looking at the importance of the issue for which the evidence was offered in relation to the other issues in th[e] case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue." *Ellerbrock*, 70 M.J. at 318 (alteration in original) (internal quotation marks and citations omitted). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

At the time of Appellant's charged misconduct, Article 120, UCMJ, provided that "[a]ny person . . . who engages in indecent conduct is guilty of an indecent act and shall be punished as a court-martial may direct." *MCM*, App. 28, at A28–2. The UCMJ defined "indecent conduct" as follows:

> [T]hat form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations. Indecent conduct includes observing, or making a videotape, photograph, motion picture, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material, without another person's consent, and contrary to that other person's reasonable expectation of privacy, of— (A) that other person's genitalia, anus, or buttocks, or (if that other person is female) that person's areola or nipple; or (B) that other person while that other person is engaged in a sexual act, sodomy . . . or sexual contact.

*Id.* at A28–4.

Accordingly, the offense of indecent act included two general elements: (a) That the accused engaged in certain conduct; and (b) That the conduct was indecent. *Id.* at A28–9.[3]

---

[3] All parties, implicitly or explicitly, agreed that Appellant videotaped HM and DM *engaged in a sexual act*.

A "defense" to a charged offense would "include[ ] any special defense which, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly or partially, criminal responsibility for those acts." Rule for Courts-Martial (R.C.M) 916(a). "Justification" is a defense whereby an act "caused or done in the proper performance of a legal duty is justified and not unlawful." R.C.M. 916(c).

As an initial matter, we find that the military judge did not abuse her discretion by applying Mil. R. Evid. 412, to assess the admissibility of the evidence offered by the Defense. Whether HM and DM, in fact, committed adultery and were "adulterers" in this case could be considered evidence of their sexual predisposition, a lifestyle that would have sexual connotations for the members. *See* Mil. R. Evid. 412(d).

We also note that the offense of indecent acts, as charged, is a general intent crime. Appellant's reasons for recording HM and DM engaged in a sexual act are irrelevant unless they somehow provide Appellant with a special defense. Here, Appellant's purported purpose in surreptitiously recording HM and DM engaged in a sexual act was to catch HM and DM engaged in a sexual act and thus committing adultery. Appellant was not performing any legal duties in conducting this personal evidence-gathering operation. His stated purpose, or intent, did not legally justify or excuse Appellant's conduct. Accordingly, we agree with the military judge's finding that Appellant's actions were wrongful and Appellant's reasons for recording HM and DM raised no defense to the charged indecent act. Furthermore, the military judge did not err in consequently instructing the members that Appellant's purpose was not a defense in this case.

We likewise agree with the military judge that HM and DM held a reasonable expectation of privacy while engaged in a sexual act. This expectation was not somehow rendered unreasonable by HM's and DM's marital status or the fact that their consensual sexual act, committed in HM's apartment and in her bedroom, could constitute adultery. Under the facts and circumstances in this case, Appellant's admittedly nonconsensual recording of HM and DM engaged in a sexual act violated their reasonable expectation of privacy while so engaged. The military judge did not abuse her discretion in finding that suspected adulterers maintain a reasonable expectation of privacy *while engaged in sexual conduct* in the privacy of their own homes and bedrooms and out of public or any other's view, and secretly recording that sexual activity without legal justification or excuse was indecent.

The military judge also correctly recognized that Appellant's right to make an unsworn statement is not wholly unrestricted. We find that she did not abuse her discretion in limiting Appellant's unsworn statement to ensure evidence she previously ruled irrelevant (and thus inadmissible) was not im-

properly revealed to the members under the guise of extenuation and mitigation. *See United States v. Sowell*, 62 M.J. 150, 152 (C.A.A.F. 2005) (citations omitted); *see also United States v. Britt*, 44 M.J. 731, 734–35 (A.F. Ct. Crim. App. 1996); *United States v. Ezell*, 24 M.J. 690, 693 (A.C.M.R. 1987).

For the aforementioned reasons, the offered evidence—not that HM and DM engaged in a sexual act, but that HM and DM were adulterers—and proffered uses of that evidence are not *material* in this case. The military judge did not deny Appellant the ability to "fully defend himself." Appellant's purpose in making the recording does not provide him a defense to the charge. Evidence that HM and DM may have committed adultery does not render Appellant's conduct not indecent by somehow diminishing, or altogether eliminating, their reasonable expectation of privacy in having sexual relations at HM's apartment in HM's bedroom. Appellant's right to allocution in an unsworn statement at sentencing is not an unfettered or constitutional right and may be limited by the military judge. The Defense failed to show the evidence was constitutionally required. Nevertheless, the military judge permitted the Defense to present evidence that Appellant suspected HM of committing adultery. The military judge also allowed the members to consider that evidence to understand essentially why Appellant made the recording. Additionally, the members were able to consider Appellant's suspicions of an extramarital affair in order to weigh the credibility of HM's and DM's testimony. Furthermore, Appellant's right to present proper matters in extenuation and mitigation in an unsworn statement during sentencing proceedings was not prejudicially restricted. The military judge did not err.

## B. Legal and Factual Sufficiency

DM, HM, JS, and EH testified during findings. The Government also introduced DM's shirt into evidence. DM and HM confirmed that they engaged in sexual acts at HM's apartment and in her bedroom. DM confirmed that on one occasion he wore the white shirt with green sleeves. JS recounted her encounter with Appellant and Appellant's statements and admissions. EH also provided the members with Appellant's admissions. No video recording or camera was produced.[4]

Appellant now challenges the legal and factual sufficiency of his conviction. Appellant once again argues that his purpose for recording HM and DM having sex—to catch the suspected adulterers in the act—provided him a legal defense. He contends that the military judge's Mil. R. Evid. 412 ruling

---

[4] The Defense did not move to suppress Appellant's admissions for lack of corroboration. *See* Mil. R. Evid. 304(c).

"made the offense a statutory no intent crime, where no mens rea had to be established. In other words, all the government had to do was prove the video was made without consent and the court members had to find [Appellant] guilty." Additionally, Appellant claims, without further explanation, "[r]egardless, the state of the evidence, without any video to establish or confirm what was in fact being taped, is legally and factually insufficient to support the findings of guilty."

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia* 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Appellant's argument mistakes a general intent crime for a so-called "no intent crime." Here, the Government had to prove that Appellant engaged in wrongful conduct and that his conduct was indecent. The military judge's proper instruction advising the members that Appellant's reason for making the recording was not a defense to the charge did not transform the offense into a "no intent crime." The elements, definitions, and the military judge's limited-use instruction ensured the offense remained what it is—a general intent crime. Considering the evidence in the light most favorable to the

prosecution, a reasonable factfinder could have found that Appellant did exactly what he claimed to have done—wrongfully recorded HM and DM without their consent while they were engaged in a sexual act. Moreover, we are convinced beyond a reasonable doubt that Appellant, as he admitted and as was supported by the evidence, to include Appellant's motive for making the recording, committed the charged indecent act. Appellant's conviction is legally and factually sufficient.

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[5]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[5] A charge and several specifications were withdrawn and dismissed after arraignment. Appellant did not enter pleas to these offenses. The remaining charges and specifications were renumbered; however, the court-martial order (CMO) and report of result of trial do not reflect the renumbering. Accordingly, we order a corrected CMO and report of result of trial to remedy this administrative error.