**UNITED STATES, Appellee,**

v.

**Christopher L. ROSATO, Airman Basic U.S. Air Force, Appellant.**

**No. 64,412.**
**ACM 28002.**

U.S. Court of Military Appeals.

Argued Nov. 28, 1990.

Decided Feb. 12, 1991.

For Appellant: *Captain Michael D. Burt* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain James C. Sinwell* (argued); *Major Brenda J. Hollis* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

On May 13, 1989, appellant was tried by a general court-martial composed of officer members at Lowry Air Force Base, Colorado. Pursuant to his pleas, he was found guilty of wrongful distribution of lysergic acid diethylamide (LSD), wrongful possession of LSD, attempted wrongful use of the same drug, failure to obey a lawful order, willful disobedience of a lawful order, and disrespect to a noncommissioned officer, in violation of Articles 112a, 80, 92, 90, and 91, Uniform Code of Military Justice, 10 USC §§ 912a, 880, 892, 890, and 891, respectively. The members sentenced appellant to a bad-conduct discharge, confinement for 2 years, and total forfeitures. In

accordance with a pretrial agreement the convening authority approved the sentence and suspended confinement in excess of 12 months. On January 31, 1990, the Court of Military Review affirmed the findings of guilty and the sentence. 29 MJ 1052.

This Court granted the following issue for review:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY LIMITING THE CONTENT OF APPELLANT'S UNSWORN STATEMENT AND EXCLUDING OTHER EVIDENCE RELATING TO THE 3320TH CORRECTION AND REHABILITATION SQUADRON REHABILITATION PROGRAM.

We hold that, under the circumstances of this case, the military judge did prejudicially err in limiting the contents of appellant's unsworn statement. *See generally United States v. Partyka*, 30 MJ 242, 246 (CMA 1990). *Cf. United States v. Breese*, 11 MJ 17, 24 (CMA 1981).

After appellant was found guilty, the sentence portion of his court-martial commenced. The prosecution called appellant's company commander, who testified that appellant had no rehabilitation potential. The defense called the noncommissioned officer-in-charge of the administrative section of the confinement center. He testified that, based on his daily observations in confinement, appellant did have rehabilitation potential. Another defense witness, Major Parker, was a clinical social worker in the Air Force, chief of a mental health center, and friend of appellant's father. He also testified in substance that appellant did have rehabilitation potential. Finally, appellant's father, a senior Air Force officer and clinical scientist department head, testified for the defense at this court-martial. He testified that there had been a tremendous change in his son's attitude, "a growth, maturity, an acceptance of responsibility, an acknowledgement of what he's done, of wanting to pay ... the price."

Prior to this testimony, the defense also sought to introduce a letter from the Judge Advocate General of the Air Force recommending the 3320th Correction and Rehabilitation Squadron (CRS) Rehabilitation Program and a newspaper article describing this program. The prosecution objected on the basis that the exhibits were irrelevant and improper. The military judge sustained trial counsel's objections to these defense exhibits.

The judge also held that certain limitations needed to be placed on appellant's unsworn statement to the members. He said:

MJ: Also, defense counsel, did you want to make an offer of proof about what your client was going to say?

DC: Yes, Your Honor.

This is not entirely what he was going to say, but this relates to what he planned to say in regards to the 3320th Rehabilitation Squadron.

I am going to read it for him.

I have been seeing a counselor at the rehabilitative squadron of the 3320th for once a week for about two months. He has been counseling me about my drug problem. I have come to realize that drugs are 95 percent of my problem.

He mentioned the rehabilitative program to me. It sounds like something that would be very helpful to me. I would like to do this program.

*I have talked with prisoners who came from the rehabilitative program and were unable to complete it. Only about two or three people out of 12 people who were in the program last year completed it. The prisoners I talked to who have been in the program said it was very difficult and a good program. The prisoners who have not been in the program constantly say it is a waste of time and a waste of eight months of your life and then you'll just get discharged. I do not agree with them. I think the program will be tough, but I know I can do it and I will be better off for it.*

I ask you to consider my attitude about rehabilitation training in determining my rehabilitative potential as a factor in your sentencing me.

MJ: I don't have any problem with him testifying about his desire to go into the 3320th as I said before. But I think whatever he has to say about what other people told him about the 3320th falls within trial counsel's motion *in limine* which I granted.

DC: So, Your Honor, specifically could I get some guidance from you about what parts of what I just read off—?

MJ: Well, the first couple of sentences of what you read talked about his desires to remain in the Air Force.

DC: The part about the counselor talking to him that there is a program?

MJ: Well, read it to me again ... the first couple of sentences.

DC: Okay.

I have been seeing a counselor at the rehabilitative squadron of the 3320th once a week for about two months. He has been counseling me about my drug problem. I've come to realize that drugs are 95 percent of my problem.

He mentioned the rehab program to me. It sounds like something that would be helpful to me. I'd like to do this program.

I have talked with prisoners—

MJ: No. I think up to that point it's fine.

DC: Up to that point.

MJ: But after that it gets into details about what other people said about the program which I think is not appropriate for the court's consideration.

DC: Okay.

How about the statement where he says—after he gets through the part about what people say about the program—where he asks them to consider his attitude about rehabilitation training in determining his rehabilitative potential as a factor in their sentencing?

MJ: Certainly they can consider his attitude.

DC: Thank you, Your Honor.

Your Honor, and just for the record, of course, the defense would object to him not being able to talk about what he's heard about the program.

(Emphasis added.)

--------

The military judge clearly restricted appellant in the exercise of his right to make an unsworn statement to the members on sentencing. *See* RCM 1001(c)(2)(C), Manual for Courts–Martial, United States, 1984. He did so on the basis of his prior evidentiary ruling that the defense could not present evidence of the details of a particular service rehabilitation program. This ruling in turn was grounded, *inter alia*, on the judge's conclusion that this program was an irrelevant collateral consequence of a prison sentence. *See generally United States v. Murphy*, 26 MJ 454, 457 (CMA 1988). Consequently, the judge also concluded that appellant could not make an unsworn statement generally referring to what other persons told him about this same rehabilitative program. Accordingly, we must decide whether the rule prohibiting consideration by members of evidence of collateral administrative consequences of court-martial sentences applies to this post-sentence program and whether it extends to appellant's unsworn statement. We think not, at least in the circumstances presented in this case.

■ First of all, the limited references to the nature of this program in appellant's unsworn statement were not nearly so extensive as the excluded defense exhibits. Neither *United States v. Murphy, supra,* nor *United States v. Lapeer*, 28 MJ 189 (CMA 1989), holds that all evidence of service-rehabilitation programs is per se inadmissible at courts-martial. *See United States v. Flynn*, 28 MJ 218, 221–22 (CMA 1989). They do stand for the proposition that evidence concerning the details of these programs need not be generally admitted as a sentence concern. *See United States v. Griffin*, 25 MJ 423, 425 (CMA), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2849,

101 L.Ed.2d 886 (1988). The rationale for this so-called "collateral-consequences" rule is to prevent "the waters of the military sentencing process" from being "muddied" by "an unending catalogue of administrative information." *United States v. Quesinberry*, 12 USCMA 609, 612, 31 CMR 195, 198 (1962). *See generally* Mil.R.Evid. 403, *Manual, supra.* We see no basis for finding that such confusion would arise in this case from the deleted portions of appellant's unsworn statement.

■ Second, the military judge prevented appellant from presenting this rehabilitation information through his unsworn statement. The servicemember's right to make such a statement to the members on sentencing is presently found in RCM 1001(c)(2). It states:

(2) *Statement by the accused.*

(A) *In general.* The accused may testify, make an unsworn statement, or both in extenuation, in mitigation, or to rebut matters presented by the prosecution, or for all three purposes whether or not the accused testified prior to findings. The accused may limit such testimony or statement to any one or more of the specifications of which the accused has been found guilty. This subsection does not permit the filing of an affidavit of the accused.

\*   \*   \*   \*   \*   \*

(C) *Unsworn statement.* The accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both, and may be made by the accused, by counsel, or both.

### Discussion

An unsworn statement ordinarily should not include what is properly argument, but inclusion of such matter by the accused when personally making an oral statement normally should not be grounds for stopping the statement.

This is a valuable right. *See United States v. Partyka*, 30 MJ at 246. It has long been recognized by military custom. *See* G. Davis, *A Treatise on the Military Law of the United States* 132–33 (3d ed. rev.1913). Moreover, it has been one generally considered unrestricted. *Id.;* W. Winthrop, *Military Law and Precedents* 299 (2d ed. 1920 Revision). *Cf. United States v. Harris*, 13 MJ 653, 654 (NMCMR 1982) (Byrne, J., concurring in the result). The evidentiary policy concerns of *United States v. Quisenberry, supra,* which have been noted above, do not readily apply in this situation. *See generally United States v. Breese, supra,* 11 MJ 17.

■ Finally, the military judge specifically prevented appellant from describing to the members his understanding of the demanding nature of this program and his willingness to undergo such a program as part of his rehabilitation. These statements were neither gratuitously disrespectful toward superiors or the court nor a form of insubordination or defiance of authority. *See Davis* and *Winthrop*, both *supra.* In fact, they were exceedingly respectful. Moreover, in view of the military judge's prior ruling barring evidentiary exhibits concerning this program, appellant was effectively precluded from communicating to the members the full depth of his commitment to "soldier his way back" to productive service. Finally, any concern of the military judge with muddying the sentencing waters could have been adequately addressed in his instructions. *See United States v. Breese,* supra. Accordingly, in view of the legal standards governing unsworn statements, we hold that the military judge improperly restricted appellant in his sentencing rights provided in RCM 1001(c)(2).

We have examined the record of trial in this case to assess whether prejudice may have inured to appellant as a result of the judge's error. Art. 59(a), UCMJ, 10 USC § 859(a). *See generally United States v. Weeks*, 20 MJ 22 (CMA 1985). We note that appellant presented a substantial case

in extenuation and mitigation on other grounds. We also note that he was permitted to make a vague reference to this service rehabilitation program in the unsworn statement which he did present to the members. Nevertheless, his commander's testimony denying his rehabilitation potential was significant contrary evidence to which he could not fully and adequately respond. *See United States v. Kirk*, 31 MJ 84, 89 (CMA 1990). Reassessment by the Court of Military Review of appellant's sentence is most appropriate in such circumstances.

The decision of the United States Air Force Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for reassessment of the sentence.

Judge COX and Senior Judge EVERETT concur.