### UNITED STATES

v.

**Stacie M. SOWELL, Seaman (E–3), U.S. Navy.**

**NMCM 9901777.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 22 Oct. 1998.

Decided 26 Aug. 2003.

Capt E.V. Tipon, USMC, Appellate Defense Counsel.

LT Amanda St. Claire, JAGC, USNR, Appellate Defense Counsel.

LT Lori McCurdy, JAGC, USNR, Appellate Government Counsel.

LT C.J. Hajec, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Chief Judge, CARVER and RITTER, Appellate Military Judges.

CARVER, Judge:

The appellant was convicted, contrary to her pleas, by a special court-martial, composed of officer and enlisted members, of conspiracy to steal two computers and theft of the same two computers of a value of about $1100, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921. The appellant was sentenced to a bad-conduct discharge, confinement for 30 days, and a fine of $550. The convening authority approved the sentence as adjudged.

The appellant has submitted eight assignments of error. We will discuss two of them—(1) restrictions on the unsworn statement and (2) sufficiency of the evidence. We find merit to the first issue and reverse as to the sentence.

After carefully considering the record of trial, the appellant's assignments of error, the Government's response, and oral argument, we conclude that the findings are correct in law and fact, but we set aside the sentence and authorize a rehearing on the sentence. Otherwise, we find that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. Unsworn Statement

In her first assignment of error, the appellant contends that the military judge erred to her substantial prejudice when he would not permit her to mention in her unsworn statement that the co-conspirator, Fire Controlman Third Class (FC3) Michelle Elliott, had been acquitted of the same allegations. We agree.

FC3 Elliott was acquitted, at a special court-martial the week before the appellant's trial, of the same two specifications of which the appellant was convicted. Fellow co-conspirators, Airman Apprentice (AA) David Schwey and Seaman (SN) Kevin Cormier, were not tried by court-martial or otherwise disciplined for their roles in the misconduct,

but were administratively separated prior to the appellant's trial.

## A. Military Judge's Ruling

■ After the appellant was convicted, the trial counsel (TC) asked the military judge to warn all parties not to reveal FC3 Elliott's acquittal to the court members during sentencing. The trial defense counsel (TDC) objected, contending that the appellant should be allowed to mention the co-conspirator's acquittal in her unsworn statement for consideration of the members in determining a proper sentence. In support, the TDC cited the case of *United States v. Grill*, 48 M.J. 131 (C.A.A.F.1998).

The military judge stated his ruling on the record as follows:

> MJ: I'm not going to allow it. She can mention she [FC3 Elliott] went to a court-martial. I'll make specific findings in that regard.
>
> I find what we're doing here [Appellant's request to mention the acquittal] is a direct impeachment of the members' determination. I don't allow that if I make a determination. I have no problem with her saying that the others got off easy and you can identify that in the unsworn statement. You can—and you can identify the fact that Petty Officer Elliott went to a court-martial, but I personally don't believe, and I don't believe this particular case [*Grill*] constrains me in limiting that right regarding the outcome of that other court-martial. Like I said, had there been an outcome in the sentence of the cocospirator I believe you're on solid ground. I don't see it in this case. I find that that would be information that, under 403, would be irrelevant and a direct impeachment of the verdict of the members at this time and I'm not going to allow it.
>
> I further find that the case that you've cited to me [*Grill*] addresses disparate treatment by various convening authorities or a particular convening authority in addressing similar conduct and treatment of those particular individuals. And in this case you have full reign to discuss what did nor did not happen to SN Cormier and AA Schwey and you have free reign to indicate

that FC3 Elliott went to a court-martial, but you're not going to provide information regarding the verdict.

> DC: So, sir, if I understand your ruling correctly, my client can mention in her unsworn statement that FC3 Elliott went to a court-martial, period, but cannot mention anything beyond that?
>
> MJ: I am not going to allow the verdict to be mentioned. And you can mention all you want about AA Schwey not going to anything, but I think the issue is disparate treatment and I don't think it's been disparate. I find that the notion of acquittal versus no-acquittal under the same general, almost identical facts to be inappropriate in a sentencing determination. I'm not going to allow that.

Record at 418–19.

The appellant complied with the military judge's ruling by stating the following in her unsworn statement:

> Please consider that neither Mr. Cormier or Mr. Schwey were charged with any crime. You asked in one of your questions while Petty Officer Elliott was on the stand if she went to court. Yes, she went to court-martial last week.

Record at 423. The appellant was referring to the fact that, on the merits of the case, one of the court members posed a question to FC3 Elliott regarding the status of any charges against her. During an out of court hearing, the military judge properly sustained the TC's objection to the question.

The TDC did not make an offer of proof, nor did the military judge request an offer of proof, regarding how the appellant would have mentioned the acquittal in her unsworn statement if she had been permitted to do so. Nor was there any discussion of a limiting instruction.

## B. Standard of Review

During sentencing, the accused may "testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution, or for all three purposes." RULE FOR COURTS-MARTIAL 1001(c)(2)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). "The accused

may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein." R.C.M. 1001(c)(2)(C).

We review the military judge's decision to restrict the unsworn statement for an abuse of discretion, as we would for any other ruling admitting or excluding evidence. *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995). In doing so, however, we must also consider that the appellant's right of allocution is so significant that it has few limitations. "In *United States v. Rosato,* 32 M.J. 93, 96 (1991), we observed that an accused's right to make an unsworn statement 'is a valuable right ... [that has] long been recognized by military custom' and that has been 'generally considered unrestricted.'" *Grill,* 48 M.J. at 132.

## C. Government's Contentions

The Government contends that (1) the military judge correctly limited the application of the *Grill* case only to disparate treatment and that the results of related cases are inadmissible even in an unsworn statement; or (2) the military judge's error, if any, was harmless. We disagree.

### (1) Disparate Treatment

First, the Government argues that the *Grill* case is limited to situations involving disparate treatment; that is, *Grill* only permits an appellant to reveal whether a co-conspirator was or was not referred to a trial by court-martial, but does not permit an appellant to divulge the results of any related case. The Government contends that the *Grill* decision did not overrule the general rule that "sentences in other cases cannot be given to court-martial members for comparative purposes." *United States v. Mamaluy,* 10 C.M.A. 102, 106, 27 C.M.R. 176, 180, 1959 WL 3587 (1959).

We do not find that the *Grill* case is limited to disparate treatment. The *Grill* opinion did not discuss disparate treatment. Rather, the court found that it was prejudicial error not to allow the appellant to mention the sentence of probation given to one of the co-conspirators, as well as the decision not to prosecute the other two. Thus, *Grill* refers both to the sentence as well as to disparate treatment of co-conspirators. We also do not agree with the Government's contention that *Mamaluy* prohibits an appellant from revealing the sentence received by a co-conspirator. Even if *Mamaluy* is still good law and was not overruled by *Grill* (as one of the dissenters in *Grill* opines), the prohibition against sentence comparisons in related cases does not apply to unsworn statements, as the court in *Grill* explains:

> The mere fact that a statement in allocution might contain matter that would be inadmissible if offered as sworn testimony does not, by itself, provide a basis for constraining the right of allocution. If, in the future, the Manual's traditional, largely unfettered right of allocution should lead to a plethora of mini-trials, the President has the authority to provide appropriate guidance in the Manual for Courts–Martial. Under the present rules, however, as we noted in [*United States v.*] *Partyka,* 30 M.J. [242] at 246 [C.M.A.1990], "So long as this valuable right is granted by the Manual for Courts–Martial, we shall not allow it to be undercut or eroded." *See also United States v. Martinsmith,* 41 M.J. 343, 349 (1995)(right to make unsworn statement "considered an important right at military law, whose curtailment is not to be lightly countenanced").

*Grill,* 48 M.J. at 133.

We further note that, in recent years, our superior court has consistently found error when the military judge limited the contents of an unsworn statement. The trend is clearly toward an expansive view of what can be included in unsworn statements. *See United States v. Britt,* 48 M.J. 233 (C.A.A.F. 1998); *United States v. Jeffery,* 48 M.J. 229 (C.A.A.F.1998); *Grill; Rosato.*

### (2) Prejudicial Error

■ Second, the Government argues that, even if the military judge erred, there was no prejudicial error because the court members could have inferred from FC3 Elliott's presence in uniform in court that she had either

been acquitted in her own court-martial or had received a very lenient sentence.

We cannot speculate what the court members might have inferred from the limited information about FC3 Elliott's court-martial that the appellant was permitted to tell the court members. As the Government suggests, the court members might have inferred that the co-conspirator was acquitted. However, we find it equally likely that the court members would have inferred from the brief comments in the unsworn statement that FC3 Elliott was convicted, since the members might have assumed that the appellant would tell them if her co-conspirator had been acquitted.

Our superior court has expressed confidence that military judges are able to tailor instructions to avoid confusing and misleading the court members with information contained in an unsworn statement. "Military judges have broad authority to give instructions on the 'meaning and effect' of the accused's unsworn statement, both to ensure that the members place such a statement 'in the proper context' and 'to provide an appropriate focus for the members' attention on sentencing.' " *United States v. Tschip,* 58 M.J. 275 (C.A.A.F.2003)(quoting *Grill,* 48 M.J. at 133).

The U.S. Air Force Court of Criminal Appeals has approved a tailored instruction for situations in which the accused discusses the results of related cases or other such matters in his unsworn statement. *United States v. Friedmann,* 53 M.J. 800 (A.F.Ct.Crim.App. 2000), *rev. den'd,* 54 M.J. 425 (C.A.A.F.2001). "When an accused uses his virtually unrestricted unsworn statement to raise issues for the members to consider, the military judge does not err in providing the court members accurate information on how to appropriately consider those matters in their deliberations." *Friedmann,* 53 M.J. at 803–04.

## D. Decision

We hold that the military judge abused his discretion when he limited the unsworn statement. We further hold that this error could have had a substantial impact on the sentence. Thus, the error was materially prejudicial to the appellant's substantial rights on sentencing. We will take appropriate action in our decretal paragraph.

## II. Legal and Factual Sufficiency

The appellant also contends that the evidence presented at trial was legally and factually insufficient to support the findings of guilty. We disagree.

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed,* 51 M.J. 559, 561–62 (N.M.Ct.Crim.App.1999); Art. 66(c), UCMJ. Clearly, there was sufficient competent evidence in the record of trial to find legal sufficiency.

The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325; Art. 66(c), UCMJ. Reasonable doubt, however, does not mean the evidence must be free from conflict. *United States v. Lips,* 22 M.J. 679, 684 (A.F.C.M.R.1986). "The factfinders may believe one part of a witness' testimony and disbelieve another." *United States v. Harris,* 8 M.J. 52, 59 (C.M.A.1979).

## A. Elements of Offenses

To support the conviction for conspiracy, we must be convinced, beyond a reasonable doubt, of the following elements:

(1) That, on or about 23 or 24 June 1998, at Naval Station, Norfolk, Virginia, the appellant entered into an agreement with FC3 Elliott to commit the offense of larceny of two Central Processor Units (CPUs) and two monitors, of a value of about $1100, the property of the U.S. Government; and

(2) That, while the agreement continued to exist, and while the appellant remained a

party to the agreement, the appellant or FC3 Elliott performed an overt act for the purpose of bringing about the object of the conspiracy, to wit: the appellant and FC3 Elliott picked up two CPUs and two monitors and placed them inside their privately owned vehicles.

In order to support the conviction for larceny, we must be convinced, beyond a reasonable doubt, of the following elements:

(1) That, on or about 23 or 24 June 1998, at Naval Station, Norfolk, Virginia, the appellant wrongfully took certain property, that is, two CPUs and two monitors, from the possession of the U.S. Government;

(2) That, the property belonged to the U.S. Government;

(3) That, the property was of a value of about $1100.00; and

(4) That, the taking by the appellant was with the intent permanently to deprive the Government of the use and benefit of the property.

After a thorough review of the evidence of record and the appellate briefs, we are convinced of the appellant's guilt beyond a reasonable doubt.

## B. Facts

On 24 June 1998, the appellant and three other Sailors, FC3 Elliott, AA Schwey, and SN Cormier, went to lunch together. They were all attached to the Transient Personnel Unit (TPU) and had been assigned to work at the Material Requirements Department (MRD), at Naval Station, Norfolk, Virginia.

During lunch, the appellant and FC3 Elliott said they needed computers for their personal use. In response, AA Schwey said he had seen some computers inside the warehouse at MRD. He said he thought they could take them without anyone noticing. When they got back from lunch, the four of them took two computers from the warehouse and put them into cars belonging to FC3 Elliott and the appellant.

Damage Controlman Third Class (DC3) Miller and Airman (AN) Plummer were outside the warehouse at the time and saw them take the computers. DC3 Miller thought this was unusual behavior, so he asked if they were going to make a delivery of the computers. One of the four told him, "Hear nothing, see nothing." Then FC3 Elliott and the appellant drove off with the computers. They returned to the warehouse 10–20 minutes later.

AA Schwey said the appellant told him that they took the computers to the appellant's apartment. He also testified that the appellant later told him they had destroyed the computers, after hearing that they were accused of the theft. The stolen computers were never recovered.

DC3 Miller reported the apparent theft to his supervisor, who then reported it to the Leading Petty Officer, Operations Specialist First Class (OS1) Peiser who reported it to the Director, Mr. Berck. Mr. Berck had last seen the computers at about 0700 that morning. The computers, which were Government property, were in working order and were waiting to be delivered.

## C. Discussion of Facts

The appellant contends that the facts are insufficient to support the findings of guilty because the two primary Government witnesses, AA Schwey and DC3 Miller, were not believable. We agree that there were discrepancies in the testimony of AA Schwey and DC3 Miller, as well as with the two defense witnesses, but we find that, on the whole, their testimony was believable and that we are satisfied of the appellant's guilt.

While AA Schwey's testimony alone would not have been sufficient to support the findings of guilty, we find that other testimony and evidence supported him. It is clear to us that the two computers were stolen from the warehouse that morning, that the four of them went to lunch together, and that DC3 Miller and others saw the four taking the computers and putting them into FC3 Elliott's and the appellant's cars.

We also find that DC3 Miller's testimony is believable and independently corroborates the testimony of AA Schwey. We find no evidence of collusion between AA Schwey and DC3 Miller to falsely accuse the appellant and FC3 Elliott.

After thoroughly considering all the evidence presented, we are convinced beyond a reasonable doubt of the appellant's guilt.

### Conclusion

We have carefully reviewed the remaining six assignments of error.[1] We conclude that none provides any basis for relief.

Accordingly, we affirm the findings of guilty. However, we set aside the sentence. A rehearing on sentence may be ordered. The record of trial is returned to the Judge Advocate General of the Navy for further proceedings consistent with this opinion.

Chief Judge OLIVER concurs.

Judge RITTER (concurring in part and dissenting in part):

I concur with the majority in affirming the findings, but I must respectfully dissent from the decision to set aside the sentence. I do not agree that the military judge abused his discretion by denying the appellant the opportunity to tell the members that a co-accused had been acquitted of similar charges. Since the case law and RULE FOR COURTS-MARTIAL 1001, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), support the military judge's ruling, I can only surmise that the majority's decision is based on speculation as to the direction our superior court may take on this issue in future cases, rather than reviewing the issue under the

high degree of deference required by the clear abuse of discretion standard.

### The Right of Allocution

An accused's right of allocution is considered an important right, and its curtailment "is not to be lightly countenanced." *United States v. Martinsmith*, 41 M.J. 343, 349 (C.A.A.F.1995). Although the right to make an unsworn statement is broadly construed, it is not wholly unconstrained. *United States v. Grill*, 48 M.J. 131 (C.A.A.F.1998). "The mere fact that a statement in allocution might contain matter that would be inadmissible if offered as sworn testimony does not, by itself, provide a basis for constraining the right of allocution." *Id.* at 133.

Since the accused's right to make a statement in allocution is not Constitutionally required, it is not only granted, but also defined, by the Manual for Courts–Martial. *See United States v. Partyka*, 30 M.J. 242, 246 (C.M.A.1990); *Grill* at 48 M.J. 134 (Crawford, C.J., dissenting). Our superior Court has observed that the President has the authority to provide guidance in the implementation of this right. *Grill*, at 48 M.J. 133. Thus, any existing constraints on the right of allocution are likely to be found in the Manual for Courts–Martial.

The Manual establishes three relevant subject areas for the accused's right to make a statement, whether sworn or unsworn. They are the same three subject areas allowed for the defense case during the pre-sentencing

1. II. A. THE MILITARY JUDGE'S DENIAL OF THE DEFENSE REQUEST TO PRODUCE MR. WILLIAM SMITH WAS AN ABUSE OF DISCRETION THAT VIOLATED SN SOWELL'S FIFTH AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS.
B. THE FAILURE OF THE MILITARY JUDGE TO RENEW HIS RULING WAS AN ABUSE OF DISCRETION.
III. THE *SUA SPONTE* ADDITION OF FC3 ELLIOTT TO THE ACCOMPLICE INSTRUCTION COMPROMISED SN SOWELL'S SIXTH AMENDMENT RIGHT TO PRESENT EXCULPATORY EVIDENCE AND UNDERCUT THE PRESUMPTION OF INNOCENCE GUARANTEED BY OUR CONSTITUTION TO EVERY CRIMINAL DEFENDANT.
IV. THE IDENTIFICATION OF FC3 ELLIOTT AS A "CO–CONSPIRATOR" FOUR TIMES DURING THE TRIAL COUNSEL'S CLOSING ARGUMENT DURING THE MERIT'S PHASE MATE-

RIALLY PREJUDICED SN SOWELL AND WAS IMPROPER ARGUMENT.
V. THE FAILURE BY THE DEFENSE COUNSEL TO RENEW HIS OBJECTION TO THE DENIAL OF A CONSTITUTIONALLY REQUIRED WITNESS, HIS FAILURE TO OBJECT TO THE MILITARY JUDGE'S *SUA SPONTE* ALTERATION OF THE ACCOMPLICE INSTRUCTION AND HIS FAILURE TO OBJECT TO THE IMPROPER REFERENCE IN THE TRIAL COUNSEL'S CLOSING ARGUMENT ON THE MERITS CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL.
VII. BASED ON THE CUMULATIVE EFFECT OF ASSIGNMENT OF ERRORS I–V, SN SOWELL WAS DENIED A FAIR TRIAL.
VIII. AN APPROVED BAD CONDUCT DISCHARGE FOR A MAST REFUSAL IS AN INAPPROPRIATELY SEVERE SENTENCE.
Appellant's Brief and Assignment of Errors of 30 Aug 2001 at i and ii.

phase of trial: matters in extenuation, in mitigation, and in rebuttal of matters presented by the prosecution. R.C.M. 1001(c)(1) and (2). Evidence that falls outside these broad categories is, by definition of these terms, irrelevant to the defense case on presentencing—even for an accused's unsworn statement. Thus, the President has already provided guidance for limiting unsworn statements by defining "matter in extenuation" and "matter in mitigation" in R.C.M. 1001(c)(1)(A) and (B), respectively. Unless relevant for rebuttal, the fact that a co-accused was acquitted of the same or similar charges is not within the permissible scope of an unsworn statement, because it does not fall under the definition of either of these terms.

### Discussion

A co-accused's acquittal is not a "matter in extenuation," because it does not "serve[ ] to explain the *circumstances surrounding the commission* of the offense." R.C.M. 1001(c)(1)(A) (emphasis supplied). Indeed, since the same Manual provision specifically limits "matter in extenuation" to "reasons for committing the offense *which do not constitute a legal justification or excuse* " (emphasis supplied), the Rule impliedly bars such evidence inasmuch as it tends to argue that the accused should have been *justified* or *excused* by the court's findings on the merits.

A co-accused's acquittal is not a "matter in mitigation" either, since this category is defined as evidence "introduced to *lessen* the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of *clemency.*" R.C.M. 1001(c)(1)(B)(emphasis supplied). The logical relevance of a co-accused's acquittal is not an argument that the accused should receive a *lesser* punishment, either by the judge or later by the convening authority. It is simply that the accused should not be found guilty at all, since another person facing similar charges and evidence was found not guilty.

There was no allegation in this case that the prosecution presented evidence that could be rebutted by informing the members of a co-actor's acquittal. The result is that FC3 Elliott's acquittal did not fit under any of the three permissible categories of "matters to be presented by the defense" under R.C.M. 1001(c). This information was therefore outside the proper scope of the appellant's right of allocution, according to the President's existing guidance implementing this Manual-based right.

In addition to R.C.M. 1001(c), the military judge could properly rely on the case of *United States v. Teeter*, 16 M.J. 68, 73 (C.M.A.1983). There our superior court held that an accused cannot use the right of allocution to challenge the court's findings of guilt in a litigated case. As the court stated in that case,

> We are aware of no obligation, either under the Constitution or elsewhere, to provide an accused two chances to defend on the merits. In our opinion, the procedures established by the Uniform Code of Military Justice, as implemented by the Manual for Courts–Martial, are generally sufficient to satisfy due-process requirements. As appellant's alibi testimony did not even marginally relate to matters in extenuation or mitigation, the military judge did not err in excluding such irrelevant testimony. (Citing *United States v. Tobita*, 3 C.M.A. 267, 12 C.M.R. 23, 1953 WL 2174 (1953)).

*Teeter* involved an accused's sworn testimony rather than an unsworn statement, but it is still controlling precedent. The evidence ruled inadmissible in *Teeter* was excluded because it was outside the relevant scope of inquiry during the sentencing stage of trial, *not* because it violated technical rules of evidence inapplicable to an unsworn statement. Simply put, R.C.M. 1001(c)(1) defines the permissible subject matter under the Manual for any statement by the accused, sworn or unsworn, and information that challenges a court's findings of guilt is neither logically relevant to the issue of an appropriate sentence nor allowed by the stated parameters of the Rule.

### United States v. Grill

The majority's reliance on *Grill* to effectively overrule *Teeter* is misplaced. *Grill* was not a contested case, and the excluded evidence in that case could not have been construed to challenge the court's findings of

guilt, based as they were on the accused's own plea. The evidence excluded by the military judge in that case also dealt with *more lenient* dispositions of co-actors, but not with an acquittal, and thus was properly admissible as matter in mitigation; that is, evidence "introduced to *lessen* the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of *clemency*." Finally, the majority seems to read *Grill's* language as ushering in a new era in which unsworn statements are not only free of many of the evidentiary rules of admissibility, but are also unlimited in their scope as regards to *relevance*.

I am concerned that the majority's holding will open a "Pandora's box" of mischief, by eliminating one of the very few clear limitations on unsworn statements. If it is an *abuse of discretion* for a military judge to rely on the three broad categories of R.C.M. 1001(c) as well as case precedent in ruling inadmissible portions of an accused's unsworn statement, what is to stop an accused from using the unsworn statement to mount a massive attack on the findings, using everything that was not allowed in under the Military Rules of Evidence? Why not make bald assertions of dubious relevance or reliability concerning a rape victim's past sexual conduct? Why not use the unlimited scope of an unsworn statement to "gray mail" the Government in a classified case by threatening to bring out highly classified information otherwise not admissible, or to introduce privileged and inadmissible information in a politically sensitive case tried in a foreign country? If courts are reluctant to enforce the few existing limitations on an unsworn statement as they are clearly set forth in the Manual that created this right, the unsworn statement will become an all-powerful sword, rather than the protective shield it was designed to be.

## Conclusion

The military judge correctly discerned the difference between the mitigating effect of relatively light punishment for some of the appellant's co-actors, on one hand, and the attack on the findings of guilt posed by informing the members of another co-actor's acquittal, on the other. At the very least, it was within the military judge's discretion to determine that the proffered information was not extenuating, mitigating, or proper rebuttal evidence. R.C.M. 1001(c) and *Teeter* support his decision, and with such existing legal authority, I cannot agree with the majority's conclusion that he *clearly abused* his discretion. I therefore respectfully dissent.

Chief Judge OLIVER took final action in this case prior to his retirement on 1 July 2003.