**UNITED STATES**

v.

**Stacie M. SOWELL, Seaman (E–3), U.S. Navy.**

**NMCCA 9901777.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 22 Oct. 1998.

Decided 20 May 2004.

LT Amanda St. Claire, JAGC, USNR, Appellate Defense Counsel.

Capt E.V. Tipon, USMC, Appellate Defense Counsel.

Col M.E. Finnie, USMC, Appellate Government Counsel.

LT Frank Gatto, JAGC, USNR, Appellate Government Counsel.

RITTER, Senior Judge, delivered the opinion of the Court in which DORMAN, Chief Judge, HARRIS, Judge, and REDCLIFF, Judge, concur. CARVER, Senior Judge, filed an opinion concurring in part and dissenting in part, with VILLEMEZ, Judge, and SUSZAN, Judge, joining. PRICE, Senior Judge, did not participate in the decision of the case.

RITTER, Senior Judge:

This case comes before us on a Government motion for *en banc* reconsideration of a published decision of this court, *United States v. Sowell*, 59 M.J. 552 (N.M.Ct.Crim.App.2003)(hereinafter *Sowell I*). In that decision, after finding the evidence legally and factually sufficient to establish the appellant's guilt, and concluding that six other assigned errors did not provide any basis for relief, a divided panel of this court set aside the sentence, finding that the military judge abused his discretion in restricting the appellant's unsworn statement. We granted the Government's request for *en banc* reconsideration in order to state this court's view on the application of relevant case law precedents, including *United States*

*v. Grill,* 48 M.J. 131 (C.A.A.F.1998), to the facts of this case.

We have carefully considered the record of trial, the appellant's eight assignments of error, the Government's response, the Government's request for reconsideration, and the appellant's reply. We conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), Uniform Code of Military Justice, 10 U.S.C. §§ 859(a) and 866(c). More particularly, we affirm so much of the court's 26 August 2003 decision as found the evidence legally and factually sufficient to establish the appellant's guilt, and concluded that six other assigned errors did not provide any basis for relief. We also find that the military judge did not abuse his discretion in restricting the appellant's unsworn statement, where the appellant sought to challenge the members' verdict of guilty by informing them of a co-conspirator's previous acquittal on related charges.

### Background

The appellant and three other Sailors were accused of stealing two computers and various computer equipment from the Navy command to which all four were temporarily assigned. One of the four, Airman Apprentice (AA) David Schwey, testified for the Government at trial, and stated that the appellant and Fire Controlman Third Class (FC3) Michelle Elliott each expressed a desire for a personal computer. AA Schwey and the fourth co-conspirator, Seaman (SN) Kevin Cormier, agreed to help the two females steal a pair of refurbished computers from their command. After a fifth co-worker reported to the command having just seen the two females putting the computer equipment into their cars and driving off, the command confirmed that the property was missing and initiated an investigation. As a result, the command referred special court-martial charges against the two females suspected of taking possession of the computers. However, the command did not refer charges against the two men who assisted in the theft, but administratively separated them prior to the appellant's trial. Of the two

cases referred to courts-martial, FC3 Elliott was tried first, and was acquitted.

The appellant was tried and convicted before a court-martial composed of members, with enlisted representation. Before the presentencing hearing, the trial counsel asked the military judge to warn the parties not to reveal to the members the fact that FC3 Elliott was acquitted on related charges. Citing *Grill,* the trial defense counsel argued that the appellant had the right to mention the co-conspirator's acquittal for consideration by the members in determining a proper sentence. The military judge allowed information regarding the dispositions of the two co-conspirators not charged, but found that information regarding FC3 Elliott's acquittal was irrelevant to the appellant's sentence and would constitute "a direct impeachment of the members' determination" on findings. Record at 418.

On appeal to this court, the appellant contends that the military judge misconstrued *Grill* in prohibiting the appellant from mentioning the acquittal of her co-conspirator during her unsworn statement. On 26 August 2003, a panel of this court agreed, finding that *Grill* allows an accused to mention sentences of related cases in an unsworn statement, and that the military judge in this case committed prejudicial error by prohibiting the appellant from informing the members of FC3 Elliott's acquittal. The Government asked this court to reconsider that decision *en banc.* We granted the Government's motion, to review and clarify *Grill's* application to the facts of this case.

### Standard of Review

As we noted in our earlier decision in this case, we review the military judge's decision to restrict the unsworn statement under an abuse of discretion standard, just as we would for any other ruling admitting or excluding evidence. *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995). However, we must do so with full regard for the largely unfettered nature of an accused's right to make an unsworn statement.

### The Right to Make an Unsworn Statement

Although the right of a service member to make an unsworn statement has long been

recognized by military custom, *see United States v. Rosato,* 32 M.J. 93, 96 (C.M.A.1991), its current basis in law is RULE FOR COURTS-MARTIAL 1001(c)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), which states, in pertinent part:

(2) *Statement by the accused.*

(A) *In general.* The accused may testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution, or for all three purposes whether or not the accused testified prior to findings.

The right to make an unsworn statement is a valuable right, and one that is not to be undercut or eroded. *United States v. Partyka,* 30 M.J. 242, 246 (C.M.A.1990). Although this right is broadly construed, it is not wholly unconstrained. *Grill,* 48 M.J. at 133. "The mere fact that a statement in allocution might contain matter that would be inadmissible if offered as sworn testimony does not, by itself, provide a basis for constraining the right of allocution." *Id.* However, it is inappropriate to include matter in an unsworn statement that is "gratuitously disrespectful toward superiors or the court [or] a form of insubordination or defiance of authority." *Id.* at 132 (quoting *Rosato,* 32 M.J. at 96).

### United States v. Grill

As the separate opinions of our earlier decision demonstrate, the issue presented concerns conflicting interpretations of the *Grill* decision. The military judge's ruling in the case at bar was based on his view that *Grill's* holding allows an accused to inform the court, through the unsworn statement, of co-conspirator case dispositions and sentence comparisons, but that *Grill's* logic did not extend to a co-conspirator's acquittal. In *Sowell I,* a divided panel of this court determined that *Grill's* holding reasonably includes such acquittals. Upon reconsideration, we disagree with *Sowell I.* We interpret *Grill* as a consistent application of prior case law or, at most, an incremental extension of that case law, rather than as creating a new rule—one that would ignore all prior existing restraints of case law and the Manual for Courts–Martial by expanding, virtually without limit, the right to make an unsworn statement.

In *Grill,* the accused sought to reveal through his unsworn statement the fact that no charges were brought against two of his three civilian co-conspirators, and that the third was charged, pled guilty, and received only probation. The military judge ruled this information objectionable on the grounds that it was irrelevant and confusing under Military Rules of Evidence 402 and 403, MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.). On appeal, the Court of Appeals for the Armed Forces (CAAF) first noted that it was unnecessary to decide whether challenged statements offered in an unsworn statement might be inadmissible under the rules of evidence. Then, emphasizing that the right to make an unsworn statement has been broadly construed for decades, our superior court found that the more lenient treatment received by the accused's co-conspirators was not so objectionable that the accused should have been restricted in his right to make an unsworn statement on this basis. The CAAF explained that the military judge could have addressed his stated concern that the information was "confusing and misleading to the members" by means of a tailored instruction. *Grill,* 48 M.J. at 133.

In *Sowell I,* the Government argued that *Grill* only applied to case dispositions of co-conspirators not prosecuted, but not to the sentences of convicted co-conspirators. The majority decision corrected this misconception by noting that *Grill* found it was prejudicial error to prohibit the mention of a co-conspirator's sentence to probation, as well as the civilian authorities' decision not to prosecute two other co-conspirators. The court stated, "[t]he trend [in recent CAAF decisions] is clearly toward an expansive view of what can be included in unsworn statements," and reasoned that a co-conspirator's acquittal is encompassed in the idea of "sentence comparison." *Sowell I,* 59 M.J. at 555. Citing *Grill's* guidance regarding the use of tailored instructions to clarify any confusion resulting from an unsworn statement, the court then held that the military judge abused his discretion in prohibiting the appellant from mentioning FC3 Elliott's acquittal, and set aside the sentence.

## An Acquittal is Not a Sentence

We have no doubt that *Grill* deals with more than disparate treatment, and allows an accused to reveal co-conspirators' sentences through the unsworn statement. The military judge in the instant case also recognized that lenient sentences were contemplated in *Grill*, when he told the trial defense counsel: "[h]ad there been an outcome in the sentence of the co-conspirator I believe you're on solid ground." Record at 419. An accused could argue that a lenient sentence in a related case, though of such marginal relevance that it may be inadmissible as *evidence, see United States v. Mamaluy*, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180, 1959 WL 3587 (1959), should be considered by the sentencing authority in the hope of securing a similarly lenient punishment. It thus fits within a broad construction of R.C.M. 1001(c)'s definition of a "matter in mitigation," and as *Grill* made clear, may be raised in an unsworn statement, since such statements are *not* evidence and the right to make them is broadly construed. *See Grill*, 48 M.J. at 133.

However, we agree with the military judge that the logical consequence of a co-actor's acquittal is different than that of a co-conspirator's lenient sentence or disposition of charges not resulting in a court-martial. An acquittal on related charges is neither a matter in extenuation, that serves to explain the circumstances of the offense, nor a matter in mitigation, that serves to "lessen the punishment to be adjudged ... or to furnish grounds for a recommendation of clemency." R.C.M. 1001(c)(1)(B). Rather, the only logical consequence of a co-conspirator's acquittal is to tell the members that their findings are wrong, improperly implying that they should reconsider the verdict. It argues that, just as a previous court found the evidence unavailing in the case of a co-conspirator, so a fair and consistent application of the law must exonerate the accused as well.

We do not believe the holding in *Grill* authorizes an accused to continue contesting adjudged guilt during the sentencing phase of trial. Indeed, this and other restrictions on the right of allocution are clearly implied in R.C.M. 1001 and other sources of military law. These implied restrictions were not raised by the facts in *Grill* and their efficacy therefore cannot be said to have been resolved by the CAAF in that case.

## What *Grill* Did Not Address

We view *Sowell I* as taking a more expansive view of *Grill* than our superior court intended, and one that would invalidate prior existing law by implication. In reaching its decision in *Grill*, the CAAF simply re-emphasized points made earlier in *Rosato* concerning the broad scope and the critical importance of the right of allocution. The CAAF did not attempt to definitively delimit the boundaries of this right, as this clearly was not the court's purpose in *Grill*. Rather, the court was engaged in preventing *unnecessary* restriction on the right to make an unsworn statement—which is not evidence—based on evidentiary rules and case law that only restrict evidence. *Grill* thus did not specifically address, nor do we believe our superior court intended to address, the interaction between the right of allocution and all other sources of military law that may act to restrict that right.

For instance, while it is clear from *Grill* and *Rosato* that the Military Rules of Evidence are not the standard by which an unsworn statement is to be measured, we do not read these cases as giving an accused *carte blanche* to use the unsworn statement in defiance of every purpose behind those rules. For instance, *Grill* does not address or condone an accused using the unsworn statement to divulge irrelevant classified or otherwise privileged information in violation of Mil. R. Evid. 505 and 506, or to savage a rape victim's reputation in disregard of Mil. R. Evid. 412, simply because the accused chose not to make his statement under oath. *See United States v. Ezell*, 24 M.J. 690 (A.C.M.R.1987)(finding no error where military judge excluded reference in the unsworn statement to a rape victim's past sexual behavior and experience). In such cases, *Grill's* preferred remedy of a carefully-tailored instruction serves little purpose, for the harm is done to national security, important government interests guarded by the law of privileges, or the rape victim's reputation, as soon as the unsworn statement is finished, regardless of anything the military judge

does thereafter.[1]  Indeed, we see no point in having Mil. R. Evid. 412, or other rules barring the admission of evidence on relevance grounds, if the accused is permitted to raise during the unsworn statement everything that was barred by the trial court's rulings. Thus, we do not view *Grill's* reference to certain recognized restrictions on the use of unsworn statements as having been intended as an exhaustive list of *all* such restrictions.

Likewise, we see nothing in *Grill* to indicate that R.C.M. 1001(c)(2) no longer applies to limit the general scope of an unsworn statement, however broadly this right is construed.  R.C.M. 1001(c)(2) specifically limits the scope of the accused's statement, whether sworn or unsworn, to matters "in extenuation, in mitigation or to rebut matters presented by the prosecution[.]"  Matters in extenuation and mitigation, though broad concepts, are clearly defined in R.C.M. 1001(c)(1), and by definition pose some kind of limitation on the relevant subject matter of the unsworn statement.

However, we need not attempt to probe the outer limits of relevance or the specific restrictions that apply to an accused's unsworn statement beyond those already established by existing precedent.  It is sufficient for our purpose to point out that the military judge narrowly limited the appellant's unsworn statement in this case, forbidding only the reference to the acquittal of one co-conspirator, while allowing the appellant to mention the more lenient dispositions of the charges against AA Schwey and SN Cormier. Not only do we find that the military judge acted within his discretion in limiting the appellant's unsworn statement in this one regard, we consider the military judge's decision to be consistent with *Grill,* as explained below.

### The Military Judge's Ruling was Consistent with *Grill*

■  We view the military judge's ruling as being consistent with the principles set forth in *Grill* for at least three reasons.  First, *Grill* expressly ruled that under the broad construction accorded the right of allocution, an accused's unsworn statement may contain information regarding co-actors' more lenient dispositions and sentences.  But, as the trial judge noted, an acquittal is neither a more lenient case disposition nor a lenient sentence, and poses an entirely different contention to the members.  The military judge's ruling thus did not contradict the express holding in *Grill.*

■  Second, the majority opinion in *Grill* did not reference, much less overrule, the case of *United States v. Teeter,* 16 M.J. 68 (C.M.A.1983), which clearly prohibits an accused from attacking the findings of guilt during the sentencing phase of trial[2].  As the Court stated in that case:

> We are aware of no obligation, either under the Constitution or elsewhere, to provide an accused two chances to defend on the merits. In our opinion, the procedures established by the Uniform Code of Military Justice, as implemented by the Manual for Courts–Martial, are generally sufficient to satisfy due-process requirements. As appellant's alibi testimony *did not even marginally relate to matters in extenuation or mitigation,* the military judge did not err in excluding such irrelevant testimony. *United States v. Tobita,* 3 U.S.C.M.A. 267, 12 C.M.R. 23, 1953 WL 2174 (1953).

*Id.* at 73 (emphasis added).

*Teeter* involved an accused's sworn testimony rather than an unsworn statement, but is still controlling in this case.  A co-conspirator's acquittal, like evidence of an alibi, chal-

---

1.  Additionally, broadening the scope of an unsworn statement arguably broadens the scope of discovery.  For example, if an accused is entitled to mention, in the unsworn statement, classified or privileged information that is otherwise inadmissible, it follows that he is also entitled to discovery of it, regardless of its relevance to the charges, possible defenses, or matters in extenuation or mitigation.  Discovery in such cases would be an *unlimited* fishing expedition for information that would force the Government to dismiss the charges.

2.  *Grill's* logic does not overrule *Teeter* by implication, either, for *Grill* was not a contested case. Thus, the facts presented to the court did not reasonably raise the issue of whether an accused can undermine the court's findings of guilt during sentencing, since in a contested case such findings are based on the accused's own pleas.

lenges the members' findings of guilt and therefore does "not even marginally relate to matters in extenuation or mitigation[.]" *Id.*

Third, we find the military judge's ruling to be consistent with *Grill* because it invoked a specific restriction on unsworn statements noted by the court in that case. As noted above, the logical inference raised by informing the members of a co-conspirator's acquittal on related charges is that the members are wrong and that it is unfair to punish the accused before them. We view this message—of refusing to defer to the members' findings determination during the presentencing hearing—as "a form of . . . defiance of authority," which both *Grill* and *Rosato* recognized as a well-established restriction on the use of the unsworn statement. *Grill,* 48 M.J. at 132 (quoting *Rosato,* 32 M.J. at 96).

Finally, we derive confirmation for our interpretation of *Grill* from the language of R.C.M. 1001(c)(1), which provides for and defines the scope of the right of allocution. R.C.M. 1001(c)(1)(A) specifically includes within the definition of "matter in extenuation" "those reasons for committing the offense *which do not constitute a legal justification or excuse,*" thereby limiting the right of allocution to matters that do not challenge the court's findings of guilt. (Emphasis added). Offering such matter undermines the finality of the verdict of guilt, shows a lack of respect for the decision of the court, and does not assist the court in arriving at a just and appropriate sentence. We thus view *Sowell I* as departing from *Grill's* logic to countenance a misuse of the right of allocution that is prohibited by both R.C.M. 1001(c)(1) and *Teeter,* as well as *Grill's* own warning against using this right as "a form of . . . defiance of authority." *Grill,* 48 M.J. at 132.

## Conclusion

We find that the appellant's mention of FC3 Elliott's acquittal was rightly excluded, not because of evidentiary concerns which are inapplicable to an unsworn statement, but because: (1) it challenged, during the presentencing hearing, the correctness of the members' decision on the issue of guilt, and (2) it "did not even marginally relate to"

those matters within the relevant scope of inquiry during the sentencing stage of trial, as defined by R.C.M. 1001(c)(1). For both of these reasons, the military judge could properly rely on *Teeter* and R.C.M. 1001(c)(1). Finally, we view this challenge to the court's decision on findings as reasonably constituting "a form of . . . defiance of authority"—a long-recognized restriction on the right of allocution, and one that was specifically listed as such in both *Grill* and *Rosato*. With this legal support for his ruling, we cannot find that the military judge abused his discretion in excluding from the appellant's unsworn statement information concerning FC3 Elliott's acquittal.

Even if the military judge erred, we find no material prejudice to a substantial right of the appellant. To the extent that FC3 Elliott's acquittal before a different court-martial would have had any logical consequence, it was not to argue for a lenient sentence, or even for no punishment, but to suggest that the members had no legal right to sentence the appellant at all. The information excluded was thus neither matter in extenuation or mitigation, nor rebuttal under R.C.M. 1001(c), and could not have assisted the members in their task of determining a just sentence.

Accordingly, the findings and the sentence are affirmed, as approved by the convening authority.

Chief Judge DORMAN, Judge HARRIS, and Judge REDCLIFF concur.

CARVER, Senior Judge: (concurring in part, dissenting in part).

I respectfully dissent as to the majority's resolution of the assignment of error regarding the military judge's limitation on the appellant's unsworn statement. I believe that the military judge abused his discretion and committed prejudicial error. As a result, I would set aside the sentence and authorize a rehearing on sentence. However, I concur with the majority's denial of the other seven assignments of error. *See United States v. Sowell,* 59 M.J. 552 (N.M.Ct. Crim.App.2003).

## A. Unsworn Statement

The appellant contends that the military judge erred to her substantial prejudice when he would not permit her to mention in her unsworn statement that a co-conspirator, Fire Controlman Third Class (FC3) Michelle Elliott, had been acquitted of the same allegations.

FC3 Elliott was acquitted, at a special court-martial the week before the appellant's trial, of the same two specifications of which the appellant was convicted. Fellow co-conspirators, Airman Apprentice (AA) David Schwey and Seaman (SN) Kevin Cormier, were not tried by court-martial or otherwise disciplined for their roles in the misconduct, but were administratively separated prior to the appellant's trial.

## B. Military Judge's Ruling

After the appellant was convicted, the trial counsel (TC) asked the military judge to warn all parties not to reveal FC3 Elliott's acquittal to the court members during sentencing. The trial defense counsel (TDC) objected, contending that the appellant should be allowed to mention the co-conspirator's acquittal in her unsworn statement for consideration of the members in determining a proper sentence. In support, the TDC cited the case of *United States v. Grill*, 48 M.J. 131 (C.A.A.F.1998).

The military judge stated his ruling on the record as follows:

MJ: I'm not going to allow it. She can mention she [FC3 Elliott] went to court-martial. I'll make specific findings in that regard.

I find what we're doing here [the appellant's request to mention the acquittal] is a direct impeachment of the members' determination. I don't allow that if I make a determination. I have no problem with her saying that the others got off easy and you can identify that in the unsworn statement. You can—and you can identify the fact that Petty Officer Elliott went to a court-martial, but I personally don't believe, and I don't believe this particular case [*Grill*] constrains me in limiting that right regarding the outcome of that other court-martial. Like I said, had there been an outcome in the sentence of the coconspirator [sic] I believe you're on solid ground. I don't see it in this case. I find that that would be information that, under 403, would be irrelevant and a direct impeachment of the verdict of the members at this time and I'm not going to allow it.

I further find that the case that you've cited to me [*Grill*] addresses disparate treatment by various convening authorities or a particular convening authority in addressing similar conduct and treatment of those particular individuals. And in this case you have full reign to discuss what did or did not happen to Cormier and Schwey and you have free reign to indicate that FC3 Elliott went to a court-martial, but you're not going to provide information regarding the verdict.

DC: So, sir, if I understand your ruling correctly, my client can mention in her unsworn statement that FC3 Elliott went to a court-martial, period, but cannot mention anything beyond that?

MJ: I am not going to allow the verdict to be mentioned. And you can mention all you want about Schwey not going to anything, but I think the issue is disparate treatment and I don't think it's been disparate. I find that the notion of acquittal versus non-acquittal under the same general, almost identical facts to be inappropriate in a sentencing determination. I'm not going to allow that.

Record at 418–19.

The TDC did not make an offer of proof, nor did the military judge request an offer of proof, regarding how the appellant would have mentioned the acquittal in her unsworn statement if she had been permitted to do so. Nor was there any discussion of a limiting instruction.

The appellant complied with the military judge's ruling by stating the following in her unsworn statement:

Please consider neither Mr. Cormier or Mr. Schwey were charged with any crime. You asked in one of your questions while Petty Officer Elliott was on the stand if

she went to court. Yes, she went to court-martial last week.

Record at 423.

## C. Standard of Review

During sentencing, the accused may "testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution, or for all three purposes...." RULE FOR COURTS-MARTIAL 1001(c)(2)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). "The accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein." R.C.M. 1001(c)(2)(C).

We review the military judge's decision to restrict the unsworn statement for an abuse of discretion, as we would for any other ruling admitting or excluding evidence. *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995). In doing so, however, we must also consider that "an accused's right to make an unsworn statement 'is a valuable right ... [that has] long been recognized by military custom' and that has been 'generally considered unrestricted.'" *Grill,* 48 M.J. at 132 (quoting *United States v. Rosato,* 32 M.J. 93, 96 (C.A.A.F.1991)). In recent years, our superior court has consistently found error when the military judge limited the contents of an unsworn statement. The trend is clearly toward an expansive view of what can be included in unsworn statements. *See Grill; United States v. Britt,* 48 M.J. 233 (C.A.A.F.1998); *United States v. Jeffery,* 48 M.J. 229 (C.A.A.F.1998); *Rosato.*

## D. Impeachment of the Findings

The majority holds that the military judge did not err in limiting the unsworn statement, because mentioning the acquittal would have been an impermissible challenge to the members' findings of guilty, citing *United States v. Teeter,* 16 M.J. 68 (C.M.A. 1983) and *United States v. Mamaluy,* 10 C.M.A. 102, 106, 27 C.M.R. 176, 180, 1959 WL 3587 (1959).

I agree with the majority that an appellant does not have an unlimited right to say anything in an unsworn statement. The majority notes that an appellant does not have the right to reveal otherwise inadmissible classified documents, privileged communications, or the reputation of a rape victim. I also agree that an appellant is not permitted to relitigate a defense, as the appellant attempted to do in *Teeter.* However, I believe that *Mamaluy* (holding that sentences in other cases cannot be given to court-martial members for comparative purposes) has either been overruled by *Grill* (as a dissenter opines) or the holding simply does not apply to unsworn statements:

> The mere fact that a statement in allocution might contain matter that would be inadmissible if offered as sworn testimony does not, by itself, provide a basis for constraining the right of allocution. If, in the future, the Manual's traditional, largely unfettered right of allocution should lead to a plethora of mini-trials, the President has the authority to provide appropriate guidance in the Manual for Courts–Martial. Under the present rules, however, as we noted in [*United States v.*] *Partyka,* 30 M.J. [242] at 246 [C.M.A.1990], "(S)o long as this valuable right is granted by the Manual for Courts–Martial, we shall not allow it to be undercut or eroded." *See also United States v. Martinsmith,* 41 MJ 343, 349 (1995)(right to make unsworn statement "considered an important right at military law, whose curtailment is not to be lightly countenanced").

*Grill,* 48 M.J. at 133.

The majority finds that revealing the acquittal would have been, or was intended to be, an impeachment of the conviction. There was no indication in the record that the appellant intended to argue that she was innocent. Rather, the appellant offered the information for sentencing purposes. But, if she had tried to impeach the verdict, the military judge could have stopped her or advised the court members to disregard her comments.

Our superior court has expressed confidence that military judges are able to tailor instructions to avoid confusing and misleading the court members with information contained in an unsworn statement. "Military

judges have broad authority to give instructions on the 'meaning and effect' of the accused's unsworn statement, both to ensure that the members place such a statement 'in the proper context' and 'to provide an appropriate focus for the members' attention on sentencing.'" *United States v. Tschip*, 58 M.J. 275 (C.A.A.F.2003)(quoting *Grill*, 48 M.J. at 133).

The U.S. Air Force Court of Criminal Appeals has approved a tailored instruction for situations in which the accused discusses the results of related cases or other such matters in his unsworn statement. *United States v. Friedmann*, 53 M.J. 800 (A.F.Ct.Crim.App. 2000), *rev. denied*, 54 M.J. 425 (C.A.A.F. 2001). "When an accused uses his virtually unrestricted unsworn statement to raise issues for the members to consider, the military judge does not err in providing the court members accurate information on how to appropriately consider those matters in their deliberations." *Friedmann*, 53 M.J. at 803–04.

Further, I do not believe that the *Grill* case is limited to disparate treatment as stated by the military judge. The *Grill* opinion did not discuss disparate treatment. Rather, the court found that it was prejudicial error not to allow the appellant to mention the sentence of probation given to one of the co-conspirators, as well as the decision not to prosecute the other two. Thus, *Grill* refers both to sentence or punishment comparison as well as to disparate treatment of co-conspirators.

I would hold that *Grill* would allow an appellant to mention in an unsworn statement that a co-conspirator was acquitted, and thus, received no punishment.

## D. Prejudicial Error

The majority holds that, even if the military judge erred in limiting the appellant's unsworn statement, there was no prejudicial error because the excluded information was logically offered only to impeach the verdict by suggesting that the court members had no legal right to sentence her at all.

I find otherwise. It appears to me she offered the information in order to show that she was the only one of four co-conspirators that was to be sentenced.

In my opinion, such information, if presented, would have had a substantial impact on her sentence. Thus, I would find that the military judge committed prejudicial error.

Accordingly, I would have set aside the sentence and authorized a rehearing on sentence.

Judge VILLEMEZ and Judge SUSZAN concur.